## THE PEOPLE *v.* STEWART.

Where a juror, in a capital case, was asked if he entertained such conscientious opinions as would preclude him from finding the defendant guilty, when the offence charged was punishable with death, to which he answered that he was opposed to capital punishment on principle: *Held,* that it was error to sustain the challenge, for cause, by the prosecution, on such answer.

*Conscience* and *principle* have a distinct and separate meaning, well recognized, and it must be presumed that the Legislature employ words with reference to their correct signification.

The improper allowance of a challenge by the prosecution, is sufficient to cause a reversal of the judgment on a verdict of guilty. If the challenge had been disallowed, the result might have been different, and the prisoner is entitled to be tried by a panel summoned in a particular way.

APPEAL from the District Court of the Fifth Judicial District, County of Calaveras.

The defendant was indicted, tried, and convicted, of the crime of murder. On the trial, one of the jurors, being asked if he had such conscientious opinions as would prevent him from finding the defendant guilty, answered that he was opposed to capital punishment on principle. Whereupon the prosecuting attorney challenged the juror, for cause, which challenge was sustained by the Court below, and the juror excluded, under the exception of defendant's attorney.

The defendant appeals, setting forth the above in his bill of exceptions.

*Robinson, Beatty & Botts,* for Appellant.

The distinction between a conscientious opinion and convic-

tions of the mind upon principle, is very obvious, it seems to us, and is founded on the plainest principles of human nature.

The one is the act of the judgment, is defended by argument, tested by reason, and yields to the decisions of an intelligent mind. The other is the act of the conscience, or of some internal or self-knowledge, which acknowledges no superior, bows to no authority, yields to no demonstration, and is governed by no law. It ignores reason, defies argument, and is unaccountable, irresponsible to all human tests and standards. It is a law unto itself, and its scruples and its teachings are not amenable to any human tribunals, but rest alone with its possessor and his God. An intelligent citizen may, and many of them do, oppose the death penalty, for the reason that the worst use you can put a man to is to hang him; that public policy requires, and that the public good would be promoted, by adopting a punishment, even for the highest offences, less decisive than the gibbet and the cord.

An intelligent philosophic statesman might reasonably desire to see adopted such penalties for crime, which, while punishment was inflicted for the wrong, that reform might be encouraged in the wrong-doer. Opposition to the death penalty with such, would be founded upon the principles of fair argument and sound reason, and surely would not disqualify the holder from any of the duties, or deprive him of any of the privileges, of a good citizen. Such opinions would not, and do not, constitute rebellion to law or a defiance of its authority. He who, as a legislator, votes against the infliction of capital punishment in any case, would not necessarily go into the jury-box on a trial for murder, determined to take the law in his own hands; and no matter how clear the evidence, how complete his convictions of the guilt of the accused, disregard his oath and perjure his own soul, and bring in a verdict of not guilty, because the law attached to that finding a consequence or penalty he did not approve of. His opinions of what the law ought to be, would not disqualify him from obeying it as it is.

It is all different, however, with the man who opposes the infliction of death from considerations of conscience. He is bound in his own conceit by a law higher than any of human authority. If the law says, "the soul that sinneth in murder, it shall die," the man of conscience opposes that law, denies its obligations, and charges it with usurpation. "For," says he to the law, setting himself up, in the sight of his own conscience, to be the exclusive and paramount judge, "You have no right to take human life; your decree is an act of usurpation. By the light within me, I determine that your solemn determinations are contrary to the laws of nature, of God, and of the rule of right; and I am instructed by my conscience that it is wrong for you to employ me in carrying out your high behests. I shall,

therefore, as a juror, disavow any allegiance to you in this case, disregard your authority, and find the prisoner not guilty—not because I think him so, but because my conscience disapproves of the penalty you have affixed to a conviction."

If these distinctions do exist, which we respectfully submit have been fully shown, then it follows that the Court below erred in sustaining the challenge on the part of the people.

But the Attorney-General contends that the error, if it be one, is, first, an immaterial one; and, second, that no appeal, or other mode of review, lies to this Court to correct.

With regard to the last proposition, the statute provides (1 Compiled Laws, 477, third subdivision of section 433) that a bill of exceptions may be taken by the defendant from "the deciding of any questions of law not a matter of discretion." Now, if it is a matter of discretion whether a man shall be tried by this or that juror, then the prosecution is correct.

The Constitution provides that "the right of trial by jury shall remain inviolate." Who shall be qualified as jurors, and the manner of the selection, is defined by law.

If an improperly qualified and chosen juror is placed on the panel—that is, one who has not been chosen in conformity with the statute, no one would deny but that it would be fatal to a conviction. If one who is properly qualified and chosen, is ruled off the jury, to that extent, and to the same extent, has the law been violated, and the rights of the defendant been impaired. If not so with one single juror, why with the whole panel?

*Wm. T. Wallace, Attorney-General,* for the People.

It is submitted that inasmuch as the juror answered that he was opposed to capital punishment on "principle," it is clear that he entertained opinions which would preclude him from finding the defendant guilty. If he found him guilty, he violated a "principle," which he conscientiously entertained. It is the very case that the statute provides for.

A principle is a settled law, or rule of action in human beings, and if a party entertains such views as that he is opposed to capital punishment, on principle, he is clearly incompetent to sit on the trial of a capital case, and in the language of the law, he is neither to be compelled nor permitted to sit as a juror.

It is submitted that the juror was properly excluded, on motion of the district attorney, and that the judgment ought to be affirmed.

But the allowance of a challenge is not the subject of an exception; the disallowance of a challenge is ground of an exception, and the reason is obvious why this distinction is made. Compiled Laws, p. 477, § 433.

If ever a judgment should be reversed, because a challenge was improperly allowed, it ought to appear that by the allow-

ance of the challenge, the substantial rights of the prisoner were lost. Compiled Laws, p. 486, § 499.

MURRAY, C. J., delivered the opinion of the Court.

On the trial of this cause in the Court below, one of the jurors was asked if he entertained such conscientious opinions, where the offence charged was punishable with death, as would preclude him from finding the defendant guilty; to which he answered, that he was "opposed to capital punishment on principle." He was then challenged by the District Attorney for cause, and the challenge sustained.

The three hundred and forty-seventh section, subdivision nine of the criminal code, Compiled Laws, 466, provides, that a person shall neither be permitted or compelled to serve as a juror where the offence charged is punishable with death and he entertains such conscientious opinions as would preclude him from finding the prisoner guilty.

The first question which presents itself for consideration is, whether the answer of the juror was responsive to the interrogatory and disclosed any disqualification on his part.

There is an important difference between conscience and principle. Conscience is defined by Webster to be, "internal or self-knowledge, or judgment of right and wrong, or the faculty, power or principle within us, which decides on the lawfulness or unlawfulness of our own actions and affections, and instantly approves or condemns them; conscience is called by some writers, the *moral sense*, and considered as an original faculty of our nature." Principle he also defines to be, in a general sense, "the cause, source, or origin of anything; that from which a thing proceeds, as the principle of motion, the principles of action; ground, foundation, that which supports an assertion, an action, or a series of actions, or of reasoning; a general truth; a law comprehending many subordinate truths, as the principles of morality, of law, of government," etc.

In the language of the learned counsel for the appellant, "the one is the result of judgment, is tested by reason, defended by argument, and yields to the decision of an intelligent mind. The other springs from some internal source of self-knowledge, which acknowledges no superior, bows to no authority, yields to no demonstration, and is governed by no law; it ignores reason, defies argument, and is unaccountable and irresponsible to all human tests and standards; it is a law unto itself, and its scruples, and its teachings are not amenable to human tribunals, but rests alone with its possessor and his God."

All writers on moral philosophy make this same distinction. In fact, in very many cases, conscience and principle have no connection whatever, and a man may be opposed on principle to what he conscientiously believes to be right. Many men are

opposed on principle to capital punishment, because, as often remarked, they believe that the worst use that can be made of a man is to hang him; they believe that society would be benefited by the adoption of some other mode of punishment, and yet, as long as the law provides that certain crimes shall be punished with death, would feel no conscientious scruples in finding a verdict of ¦guilty against one accused of such crime. With them it is a principle founded on political prejudices, or public policy, with which conscience has no connection whatever. It will not do to say that the words *conscience* and *principle* are used in common parlance as synonymous; we have shown that they have a distinct and separate meaning, well recognized, and we are bound to suppose that the Legislature employ words with reference to their correct signification.

It is contended that the prisoner has not been injured by the allowance of the challenge, and that it is the duty of this Court to affirm the judgment, unless it clearly appears that error has intervened. In other words, that the prisoner having been fairly tried by a competent jury, we are not at liberty to say that the result would have been different if the Court had not excluded the particular juror excepted to. What the result might have been under such circumstances, we are of course unable to say, but the human mind is so constituted, that facts and circumstances do not always produce the same results; the judgment of two men upon the same state of facts may be diametrically opposite, particularly in the determination of a criminal case, when every doubt is carefully weighed and scrupulously balanced.

It is enough for us to know, that the result might have been different; that the prisoner was entitled to be tried by a panel summoned in a particular way, and that the Court erred in deciding that one of the jurors was incompetent.

Judgment reversed, and new trial ordered.