[Civ. No. 13176. Third Dist. May 31, 1972.]

STANLEY T. JACOBS, Plaintiff and Appellant, v.
CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent.

## COUNSEL

David R. Packard and Phrasel L. Shelton for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Acting Assistant Attorney General, Edmund E. White and N. Eugene Hill, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**FRIEDMAN, Acting P. J.**—The Unemployment Insurance Appeals Board sustained a referee's decision disqualifying petitioner from unemployment insurance benefits because he had been discharged from his last job for misconduct.[1] He sought review by a mandate proceeding in the superior

---

[1]Section 1256, Unemployment Insurance Code, provides in part: "An individual is disqualified for unemployment compensation benefits if the director finds that

court, which sustained the administrative determination. Petitioner appeals.

Petitioner had been employed for 12 years as a ramp serviceman for an airline. According to the referee's decision, prime reason for the discharge was petitioner's chronic absenteeism caused by chronic intoxication which was, in turn, ascribed to alcoholism.[2] Through counsel, petitioner contended that his absences were caused by alcoholism and its physical effects, thus did not amount to misconduct. Petitioner's characterization as an alcoholic was not disputed. The Unemployment Insurance Appeals Board adopted the referee's view that petitioner's chronic absences were a breach of duty owed to the employer. The board took the view that it could not regard alcoholism as a disease which incapacitated the subject from controlling his actions. On appeal, petitioner contends that alcoholism is a recognized disease; that disease-caused conduct cannot be "misconduct" under section 1256 of the Unemployment Insurance Code (fn. 1, *ante*).

█ Misconduct as a disqualifying factor for unemployment insurance has been judicially defined as " 'conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, . . . [but not] mere inefficiency, unsatisfactory conduct . . . inadvertencies or ordinary negligence . . . .' " (*Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1132 [95 Cal.Rptr. 566], quoting from *Maywood Glass Co.* v. *Stewart* (1959) 170 Cal.App.2d 719, 724 [339 P.2d 947].)

So described, the test is essentially volitional. The conduct may be harmful to the employer's interests and justify the employee's discharge; nevertheless, it evokes the disqualification for unemployment insurance benefits only if it is wilful, wanton or equally culpable.

In support of petitioner's disqualification, the Unemployment Insurance Appeals Board cited what it mistakenly called the "majority" opinion in *Powell* v. *Texas* (1968) 392 U.S. 514 [20 L.Ed.2d 1254, 88 S.Ct. 2145]. The leading opinion in *Powell* was not a majority opinion, having been signed by only four members of the federal Supreme Court.

---

he left his most recent work voluntarily without good cause or that he has been discharged for misconduct connected with his most recent work."

[2]In discharging petitioner, the employer referred not only to persistent absenteeism but also to petitioner's inability to drive safely on the airport ramp and to an emergency leave obtained under false pretenses. The unemployment insurance agency based the disqualification solely on the intoxication-induced absenteeism. The other incidents were apparently viewed as peripheral to the main issue of absenteeism.

The case involved the constitutionality of a criminal penalty for public intoxication imposed upon a defendant who had been found by the trial court to be afflicted with the disease of alcoholism. The leading opinion withheld judicial recognition of alcoholism as a "disease" which might bar punishment of certain intoxication-induced conduct. Without joining the leading opinion, a fifth judge voted to sustain the conviction because there was no finding that the accused man had lost the power to choose between public intoxication and solitude. A dissenting opinion signed by four justices, recognized varying degrees of compulsion in alcoholism but accepted the "disease" concept as precluding the imposition of criminal sanctions for public intoxication.

Quite aside from the absence of a majority opinion, *Powell* v. *Texas* is not necessarily influential in the interpretation and application of the misconduct provision of the California unemployment insurance law. In the context of various laws, an ongoing debate surrounds the imposition of legal responsibility (i.e., fault, culpability or accountability) upon chronic alcoholics.[3] An examination of the decisional and periodical literature reveals the sterility of labels and classifications. To describe alcoholism as a "disease" may be meaningful in one legal context, misleading in another. To label the individual an "alcoholic" may shield him from one kind of legal responsibility but not another. At least as to borderline cases the classification requires resort to an authoritative, agreed definition.

Some definitions are framed entirely in psychological and social terms; others include physiological factors. Some definitions demand compulsion, that is, loss of the power to abstain from drinking.[4] Others emphasize excessive and repeated use and speak of degrees of dependence rather than complete inability to abstain.[5] Other descriptions avoid formulae and

[3] See *Powell* v. *Texas, supra; Easter* v. *District of Columbia* (1966) 361 F.2d 50 [124 App.D.C. 33]; *Driver* v. *Hinnant* (1966) 356 F.2d 761; *People* v. *Hood* (1969) 1 Cal.3d 444, 458 [82 Cal.Rptr. 618, 462 P.2d 370]; *Rosas* v. *Montgomery* (1970) 10 Cal.App.3d 77 [88 Cal.Rptr. 907]; *In re Spinks* (1967) 253 Cal.App.2d 748 [61 Cal.Rptr. 743]; Bason, *Chronic Alcoholism and Public Drunkenness* (1970) 19 American University Law Review 48; Kaplan, *Powell* v. *Texas* (1969) 5 Criminal Law Bulletin 191; Kirbens, *Chronic Alcohol Addiction and Criminal Responsibility* (1968) 54 American Bar Association Journal 877; Fingarette, *The "Disease Concept of Alcoholism"* (1970) 83 Harvard Law Review 793; Saeta & Smiland, *Public Inebriate Health: The Legislature and the Revolving Door* (1970) 1 Pacific Law Journal 65; Comment (1970) 1 Pacific Law Journal 269.

[4] Thus, the National Council on Alcoholism defines an alcoholic as a "person who is powerless to stop drinking and whose drinking seriously alters his normal living pattern." (Alcoholism, p. 2, Public Health Service Publication No. 730, National Institutes of Mental Health, Education, and Welfare (1965).) Other definitions couched in terms of compulsion or loss of control are collected in M. Block, Alcoholism (1965) pages 20-21, cited in *Powell* v. *Texas, supra*.

[5] For example, the World Health Organization describes alcoholism as ". . . a

are stated in terms of species and types, some of which entail psychological dependence rather than unvaried compulsion.[6]

Much of the current debate over the law's treatment of alcoholism stems from attempts to pivot categorical judgments upon the fulcrum of nebulous behavioral concepts. The "fusion" of science and law assumes an often unattained level of scientific certitude. Legal decisions demand relative absolutes. The individual is either innocent or guilty, excused or responsible, eligible or disqualified. Granting certain dilemmas in the law's dealings with alcoholism, judicial and administrative tribunals may avoid needless transportation of dilemmas from one field to another. Eventually the tribunal must reach out for individualized justice. Collective descriptions will not do. Highly to be commended is the dual approach to alcoholism pursued in *Rosas* v. *Montgomery, supra,* 10 Cal.App.3d 77. The approach involves, first, resort to the discerned purpose of the particular statute and, second, an individualized inquiry and findings relative to the condition of the person standing before the tribunal.

■ Measured by the volitional test established under section 1256 of the Unemployment Insurance Code, the findings of the appeals board do not support petitioner's disqualification. The referee and the appeals board should have inquired and found whether he had the capacity to abstain from drinking which adversely affected his work.[7] If his intoxication-in-

chronic illness that manifests itself as a disorder of behavior . . . characterized by the repeated usage of alcoholic beverages to an extent that exceeds customary dietary use or compliance with social customs of the community and that interferes with the drinker's health or his economic or social functioning." The American Medical Association describes alcoholics as "those excessive drinkers whose dependence on alcohol has attained such a degree that it shows a noticeable disturbance or interference with their bodily or mental health, their interpersonal relations, and their satisfactory social and economic functioning." Both these definitions are included in the pamphlet publication Alcoholism cited in footnote 4, *ante.* Both avoid the implication that complete loss of volition is an unvaried ingredient of alcoholism.

The dissenting opinion in *Powell* v. *Texas, supra,* 392 U.S. at page 561 [20 L.Ed.2d at p. 1283], summarizes the definitions of alcoholism as involving loss of control "to a greater or lesser extent depending upon the physiological or psychological makeup and history of the individual . . . ." Other definitions implying a degree of control on the part of some alcoholics are collected in Fingarette, *op. cit.,* 53 Harv.L.Rev. at pages 800-808. Recovered drinkers refer to themselves as "alcoholics" even though they have acquired or reacquired the power to abstain. (*Ibid.,* at pp. 806-807.)

[6]See E. M. Jellinek, The Disease Concept of Alcoholism (1960) pages 36-39, cited in *Powell* v. *Texas, supra.*

[7]The appeals board contends that petitioner did not fulfill his burden of establishing eligibility. According to case law an applicant for unemployment insurance benefits has the burden of establishing eligibility. (*Loew's, Inc.* v. *California Emp. etc. Com.,* 76 Cal.App.2d 231, 238 [172 P.2d 938].) On the other hand, it is said that the employer has the burden of establishing misconduct. (*Maywood Glass Co.* v.

duced behavior was the product of an irresistible compulsion to drink, his behavior was neither wilful nor wanton and he did not incur the disqualification for misconduct. If he had the ability to abstain from intoxication-caused work lapses, his actions were wilful, evoking the disqualification for misconduct.

██ Judicial review of benefit decisions of the Unemployment Insurance Appeals Board is governed by Code of Civil Procedure section 1094.5. (*Fermin* v. *Dept. of Employment* (1963) 214 Cal.App.2d 586, 590 [29 Cal.Rptr. 642].) Subdivision (b) of that statute declares that abuse of discretion is established if the agency's decision is not supported by the findings. Here the findings were not adequate to invoke the disqualification for misconduct.

The judgment is reversed and the cause remanded to the trial court with directions to enter a judgment commanding the respondent board to reconsider the case in the light of this opinion.

Regan, J., and White, J.,* concurred.

A petition for a rehearing was denied June 28, 1972, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied July 26, 1972.

---

*Stewart, supra,* 170 Cal.App.2d at p. 725.) As a practical matter, the initial inquiry into eligibility at a local office of the State Department of Human Resources Development is limited by the necessity for routine, ex parte determinations based upon such information as is reasonably available. Not until the appeal to the referee and the ensuing appeal to the Unemployment Insurance Appeals Board does allocation of the burden of proof become meaningful. (See Unemp. Ins. Code, §§ 1327, 1328, 1334.) At the appellate level the agency has the task of formulating findings which support its decision. In this case the administrative findings dwelt generally on the syndrome of alcoholism without declaring the volitional or nonvolitional character of the applicant's alleged misconduct. Thus the findings do not reasonably support the decision. (Cf. *Rosas* v. *Montgomery, supra,* 10 Cal.App.3d at p. 92.)

*Assigned by the Chairman of the Judicial Council.