[Sac. No. 7986. In Bank. Apr. 23, 1974.]

HUBERT GILLES et al., Plaintiffs and Appellants, v.
DEPARTMENT OF HUMAN RESOURCES DEVELOPMENT et al.,
Defendants and Respondents.

**COUNSEL**

Stefan M. Rosenzweig, Stephen P. Berzon, Daniel S. Brunner and Jeffrey L. Kastner for Plaintiffs and Appellants.

Charles P. Scully, Donald C. Carroll, Schwartz, Steinsapir & Dohrmann, Laurence D. Steinsapir and Paul O. Halme as Amici Curiae on behalf of Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill, Raymond M. Momboisse and Edmund E. White, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**TOBRINER, J.**—Unemployment Insurance Code section 1375 permits the state to recover an overpayment of unemployment benefits from a claimant unless such "recovery would be against equity and good conscience." In holding plaintiffs liable for overpayments, however, the Unemployment Insurance Appeals Board has ruled that recoupment of an overpayment, rendered after the claimant has received timely notice that he might be required to return it, never violates equity and good conscience. In this case we hold that the board erroneously interpreted section 1375; the broad language of the statute requires that the board, in deciding whether to seek recoupment of an overpayment, consider not only the matter of notice to the recipient, but also the nature and cause of the overpayment, the hardship to the claimant that repayment may impose, and the effect, if any, that repayment will have upon the fulfillment of the objectives of the unemployment compensation laws.

1. *A review of administrative procedures in the payment of unemployment benefits and the recovery of overpayments.*

In order to frame the factual setting and legal issues raised by this appeal we summarize the statutes and administrative practices relating to the payment of unemployment benefits and the recovery of overpayments.

Unemployment compensation is an insurance program "providing benefits for persons unemployed through no fault of their own" and designed to "reduce involuntary unemployment and the suffering caused thereby to a minimum." (Unemp. Ins. Code, § 100.) It is financed in part by federal grants under the Social Security Act (42 U.S.C. §§ 501-503) and in part by state taxes on employers (Unemp. Ins. Code, §§ 976-978, 1025-1032). The level of benefits depends upon the worker's earnings during a base period of four quarters as defined in sections 1275, 1280, and 1281; benefits run for 26 weeks (Unemp. Ins. Code, § 1281, subd. (a)), but may be continued for an additional 26 weeks during times of high unemployment (see Unemp. Ins. Code, div. 1, pts. 3-4). An unemployed worker, however, is not eligible for benefits if he has left work without good cause or has been discharged for misconduct. (Unemp. Ins. Code, § 1256.)

The initial determination of an applicant's eligibility for unemployment benefits is rendered by a claims interviewer, who examines documents submitted by the applicant or his former employer and discusses the matter with the applicant in a non-adversarial setting. (See *California Human Resources Dept.* v. *Java* (1971) 402 U.S. 121, 126-128 [28 L.Ed.2d 666,

670-672, 91 S.Ct. 1347]; *Gibson* v. *Unemployment Ins. Appeals Bd.* (1973) 9 Cal.3d 494, 499 [108 Cal.Rptr. 1, 509 P.2d 945].) A party dissatisfied with the determination of the claims interviewer may appeal to the referee. (Unemp. Ins. Code, § 1328.) Following a hearing at which the parties may be represented by counsel and may present testimonial and documentary evidence, the referee decides the issue of eligibility de novo. (Unemp. Ins. Code, § 1334.) Approximately 4 to 10 weeks elapse between the filing of the appeal from the determination of the claims interviewer and the referee's decision.[1] The parties may further appeal the decision of the referee to the appeals board. (Unemp. Ins. Code, § 1336.) The board may decide the case on the record of the referee's hearing or take additional evidence (Unemp. Ins. Code, § 1336); it must issue its decision within 60 days from the filing of the appeal (Unemp. Ins. Code, § 1337).[2]

The department's authority to recover overpayments of unemployment benefits is governed by sections 1380 and 1375. In "double affirmance" cases—those in which both the interviewer and the referee decide in favor of the claimant, only to be ultimately reversed by the appeals board—section 1380 provides that the claimant is not liable for overpayments.[3] The present litigation, however, involves "single affirmance" proceedings, in which the referee and the interviewer disagreed respecting the claimant's eligibility.

In single affirmance cases, the only limitation on recovery is that set out in section 1375, which provides that "Any person who is overpaid any amount as benefits under this part is liable for the amount overpaid unless: (a) The overpayment was not due to fraud, misrepresentation or wilful nondisclosure on the part of the recipient, and (b) The overpayment was received without fault on the part of the recipient, and *its re-*

---

[1]Data compiled by the Unemployment Inurance Appeals Board and furnished to this court indicate that during 1972 approximately 30 percent of the appeals from the interviewer's ruling were disposed of within 30 days of the filing of the appeal, another 30 percent within the next 30 days, and another 25 percent within the next 15 days. Incomplete figures for 1973 show about 60 percent of the appeals resolved within 30 days of the filing of the notice of appeal.

[2]In approximately 60 percent of the cases appealed by employers to referees, and in 65 percent of the employers' appeals to the board, the decisions in favor of the claimant were upheld. (U.S. Dept. of Labor, Manpower Admin., Unemployment Ins. Statistics, table 18a at p. 14 (Mar. 1972).)

[3]Section 1380 also bars recovery of overpayments in cases in which the appeals board decides in the claimant's favor but that decision is overturned on judicial review.

*covery would be against equity and good conscience."* (Italics added.) Whenever liability for an overpayment is established under sections 1375 and 1380, the Department of Human Resources Development is authorized to recover the overpayment either by civil action or by offsetting the overpayment against future benefits to which the claimant may become entitled. (Unemp. Ins. Code, § 1379.)

The decision of the United States Supreme Court in *California Human Resources Dept.* v. *Java* (1971) 402 U.S. 121 [28 L.Ed.2d 666, 91 S.Ct. 1347] (hereafter "*Java*"), mandating immediate payment of benefits following an interviewer's or referee's finding of eligibility despite an appeal by the employer, substantially increased both the number of cases in which overpayments occurred and the amount of such overpayments. The ruling at issue in the present case is, in essence, an attempt by the board to counteract this effect of *Java* by substituting a rule of virtual automatic recoupment of overpayments in place of its previous rule for a case-by-case determination of whether recoupment violated equity and good conscience. To aid in understanding the contentions of the parties on the validity of the board's ruling, we set forth the administrative procedures employed before and after the *Java* decision.

Before *Java*, Unemployment Insurance Code section 1335 required payment of benefits pending appeal only in double affirmance cases. Since section 1380 barred liability for overpayments in a double affirmance case, and the department paid no benefits in a single affirmance case, the issue did not arise whether the "equity and good conscience" test of section 1375 applied to the determination of liability for overpayments attributable to reversals during administrative appeals. The board did utilize section 1375 to fix liability for overpayments in cases in which the error was discovered by the department itself, and in such instances the recovery was often waived when the claimant was not at fault.[4]

In 1971, the Supreme Court in *Java* held that section 1335, by withholding benefits until the claims interviewer's award was affirmed by the

---

[4]One such case was Matter of Kortun (1961) Benefit Decision 6664, in which an interviewer's erroneous decision that Kortum was eligible for benefits under the Temporary Extended Compensation Act of 1961 instead of under the provisions of the Unemployment Insurance Code resulted in a $55 overpayment. The appeals board ruled that since Kortum was entirely without fault, and payment resulted from department error, recovery of the overpayment would be "against equity and good conscience." The department also issued regulations explaining that the claimant was liable for overpayments only if (a) he was at fault, (b) he received duplicate benefits, (c) the overpayment resulted from a mistake of fact, or (d) he knew of the error and said nothing. (Local Office Manual, § 1509.)

referee, conflicted with the requirement of section 303(a)(1) of the Social Security Act (42 U.S.C. § 503(a)(1)) that benefits must be paid "when due." (402 U.S. at p. 124 [28 L.Ed.2d at pp. 669-670].) The California Legislature amended section 1335 to conform to this decision,[5] and the department, accordingly, began to pay benefits promptly after the claims interviewer found a claimant eligible.

By striking down the double affirmance requirement for payment of benefits, *Java,* as we have noted, greatly increased both the number of cases in which a claimant would receive benefits pending appeal, and the number of weeks during which such benefits would be paid. The department responded by issuing to each claimant whose case was appealed a form notice (HRD Form DE 6315) stating that "if you elect to be paid benefits [pending the appeal], and the referee or the Unemployment Insurance Appeals Board finds that you are not eligible, you will have to repay these benefits to the Department."[6]

---

[5]Unemployment Insurance Code section 1335, subdivision (c) as amended, provides that "If benefits for any week are payable in accordance with a determination by the department, or a referee issues a decision allowing benefits, such benefits shall be promptly paid regardless of any appeal. If the determination of the department or the decision of the referee is finally reversed, no employer's reserve account shall be charged with benefits paid pursuant to this subdivision."

[6]The form notice, as amended in 1971, reads as follows:
"NOTICE TO CLAIMANT REGARDING
BENEFITS PAID PENDING APPEAL
"An appeal has been filed from the local office or referee decision holding you eligible for unemployment insurance benefits. If you choose to have us do so, this Department will continue to pay benefits to you, pending the result of the appeal. You may also elect to have your benefits held in suspense pending the result of the appeal.
"If you elect to be paid benefits, and the referee or the Unemployment Insurance Appeals Board finds that you are not eligible, you will have to repay these benefits to the Department.
"If you choose to have your benefits held in suspense, you should continue to file certifications in this office for each week of unemployment until you receive the referee or Board decision; or until you return to work or your claim is potentially exhausted. If you win this appeal, you can only be paid for those weeks you have claimed.
"Please indicate your decision below by checking the appropriate box, and sign your name:
"☐ I desire that the Department pay benefits during the appeal period. If the decision on the appeal is against me, I understand that I am liable to repay these benefits to the Department.
"☐ I desire to have my benefits held in suspense pending the result of the appeal.

Signature of Claimant"
We observe that notice form DE 6315 is not a fully accurate statement of the claimant's rights and obligations; it fails to point out that if the decision on appeal

The appeals board then, in finding plaintiff Gilles liable for an overpayment, relied on his receipt of the form notice. Its opinion states that "In the instant case the claimant was not entitled to the benefits he received and he was put on notice that the money would have to be repaid if the case was reversed on appeal. It does not appear that he has any legal or moral right to the money. [¶] Accordingly, we find that it is not against equity and good conscience to require the claimant to repay the benefits." (Matter of Gilles (1971) Precedent Benefit Decision 113.) The department in turn issued a new regulation which, in effect, requires recovery of overpayments in all cases in which the claimant receives timely notice of his possible liability for such overpayments. (Local Office Manual, § 1500.8.)

## 2. *Proceedings involving the plaintiffs at bar.*

At various dates during 1970 each of the six named plaintiffs were discharged by the employers for alleged misconduct. Plaintiffs applied for unemployment benefits and, following favorable decisions by either the interviewer or the referee, began receiving weekly benefits. When plaintiffs' former employers appealed those decisions, the department sent plaintiffs the form notices advising them that they might be liable for an overpayment; plaintiffs nevertheless elected to continue to receive the weekly benefits. On appeal, however, each of the plaintiffs was ultimately found ineligible for unemployment benefits. The department then notified plaintiffs that they would be held liable for the sums received pending the appeal.

Plaintiffs then each filed a new proceeding seeking a ruling that recovery of the overpayments was barred by section 1375. The referee, acting first on the request of plaintiff Gilles, found that the overpayment was not due to fraud, misrepresentation, or wilful nondisclosure by Gilles; that the overpayment was received without fault on the part of Gilles, and that recovery would be against equity and good conscience; accordingly, he directed waiver of the liability.

---

finds the claimant ineligible for benefits, he may still escape liability for repayment under section 1375.

Plaintiffs contend that, in addition to its inaccuracy, this form notice violates Unemployment Insurance Code section 1342, which prohibits "Any waiver by any person of any benefit or right under this code . . . ." The claimant's signature to form DE 6315, however, does not purport to waive any rights or benefits and, under the interpretation of the statutes set out in this opinion, will not have the legal effect of waiving any rights or benefits.

The appeals board selected Gilles' petition as a precedent to declare its new interpretation of section 1375.[7] Reasoning that recovery of the overpayments received by Gilles after delivery to him of the form notice could not offend equity and good conscience, the board held Gilles liable. The board then turned to the requests of the other plaintiffs, and, applying the Gilles precedent, held that although the overpayments were not due to fraud, misrepresentation, wilful nondisclosure, or other fault on the part of the claimant, recovery of the portion of the overpayments received after delivery of the form notice was not against equity and good conscience. Subsequent to these decisions the department, by withholding benefits payable, recouped the overpayment to plaintiff Gilles, and part of the overpayments to plaintiffs Johnson and Rowe. It has not attempted to collect from the other plaintiffs.

Plaintiffs brought the present suit individually and as a class action on behalf of all persons who are, or will be, liable for overpayments arising from a favorable eligibility ruling overturned on appeal, not caused by their own fraud, misrepresentation, wilful nondisclosure, or other fault. Their complaint seeks a declaration respecting the construction and validity of sections 1375 and 1379, and injunction against recoupment of overpayments, and damages. The trial court, however, treated plaintiffs' suit as one for administrative mandamus under Code of Civil Procedure section 1094.5. Plaintiffs raise no objection to this classification.

Defendants (the California Department of Human Resources Development, the director of the department, the Unemployment Insurance Appeals Board, and the members of that board) demurred to the complaint. The trial court, in a memorandum opinion, stated that "Since the petitioners have not met the burden of showing that recovery would not violate equity and good conscience, since the fault, if it be that, of respondent in making the overpayment does not prevent recovery, and since the administrative practice seems reasonable in the light of the changed conditions brought about by *Java,* the petitioners cannot prevail." The court therefore sustained the demurrer and entered judgment dismissing plaintiffs' suit.[8] Plaintiffs appeal from that judgment.

---

[7]Unemployment Insurance Code section 409 authorizes the appeals board to designate and publish certain decisions as "precedents," and provides that the department and the referees "shall be controlled by such precedents except as modified by judicial review."

[8]The trial court order sustaining the demurrer did not refuse leave to amend, but in view of language in the court's memorandum opinion approving the administrative practice of seeking recoupment in all cases in which claimants receive the form notice,

3. ■ *The board's interpretation of Unemployment Insurance Code section 1375 erroneously permits recoupment of an overpayment on the sole ground that claimant has been notified of the possibility of liability and thus excludes consideration of other grounds that bear upon the issue of whether such recoupment is against equity and good conscience.*

We believe that the board's interpretation of section 1375 cannot be reconciled with either the language of that section or the purpose of the unemployment compensation program. Section 1375 establishes a standard and criterion to determine if a claimant is liable for overpayments. The board's interpretation of the section, however, would transform it into a mere requirement that a claimant be *notified* of his potential liability upon reversal of the prior favorable ruling; the section would thus be reduced to a ministerial one solely requiring such notice. What, then, becomes of the statutory language that limits recoupment to cases in which it would not be against equity and good conscience? Indeed if the Legislature merely desired to ensure that claimants receive notice, why did it not enact a statute explicitly requiring notice?[9]

Section 1375, however, says nothing of notice, but enunciates a standard of "equity and good conscience"—language of unusual generality. Such broad terms necessarily anticipate that the trier of fact, instead of attempting to channelize his decision within rigid and specific rules, will draw upon precepts of justice and morality as the basis for his ruling.[10] Thus the

---

amendment would appear futile. The appellate briefs do not discuss plaintiffs' failure to amend but join issue on the lawfulness of the administrative practice.

[9] Numerous sections of the Unemployment Insurance Code make express provision for various kinds of notices. Looking only to the statutes relating to payments of benefits and recovery of overpayments, we note that section 1327 provides expressly for notice to the employer of the filing of a claim; section 1328, for notice to the parties of the interviewer's ruling; section 1329, for notice of the computation of benefits; section 1334, for notice of the referees' decision; section 1336, for notice of the appeals board's decision; section 1376, for notice to the claimant of liability for overpayment, and section 1377 for notice to the parties of the referee's decision on the matter of overpayment.

[10] Black's Law Dictionary states that the term "equity" in its "broadest and most general signification . . . denotes the spirit and habit of fairness, justness, and right dealing which would regulate the intercourse of men with men. . . . [I]n this sense its obligation is ethical rather than jural, and its discussion belongs to the sphere of morals. It is grounded in the precepts of the conscience, not in any sanction of positive law." It adds that "In a restricted sense, the word denotes equal and impartial

language of section 1375 impliedly rejects the notion that the board can establish a rule which focuses decision upon a single narrow issue such as notice; it involves a panoramic vision that encompasses all factors which might persuade an individual—or a government—of good conscience to forego recoupment of moneys previously paid.

Notice is indeed *one* relevant factor, since a claimant who receives timely warning that he may be called upon to repay benefits cannot blindly assume no such obligation will be imposed. But to hold that notice, and notice alone, serves as the measure of the chancellor's conscience distorts the enactment. A person of "equity and good conscience," we believe, would additionally consider such matters as the cause of the overpayment, whether the claimant received only normal unemployment benefits or some extra duplicative benefit, whether the claimant changed his position in reliance upon receipt of the benefit, and whether recovery of the overpayment, by imposing extraordinary hardship on the claimant, would tend to defeat the objectives of the Unemployment Insurance Code.

Our interpretation of section 1375 finds support in the federal court decisions construing section 204 of the Social Security Act (42 U.S.C. § 404).[11] That statute prohibits recovery of overpayments from "any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." The decisions of the federal courts interpreting that section make no attempt to lay down specific standards for recovery,[12] but decide the issue

---

justice . . .; justice, that is, as ascertained by natural reason or ethical insight, but independent of the formulated body of law." (Black's Law Dictionary (4th ed. 1957), p. 634.)

"Conscience" is defined in similar generalities. (See *People* v. *Stewart* (1857) 7 Cal. 140, 143; Black's Law Dictionary (4th ed. 1957), p. 376.) According to the court in *Stewart*, conscience "ignores reason, defies argument, and is unaccountable and irresponsible to all human tests and standards; it is a law unto itself, and its scruples, and its teachings are not amenable to human tribunals, but rests alone with its possessor and his God." (7 Cal. at p. 143.)

[11]Although we have found no legislative history to aid in interpretation of section 1375, we believe that the section's reference to "equity and good conscience" came from section 204 of the Social Security Act. (42 U.S.C. § 404.) This statute, in turn, was modeled upon section 28 of the World War Veterans Act. (38 U.S.C. § 3102.) The legislative history of the Veterans Act provides no material useful in construing the reach of "equity and good conscience," nor are the few reported decisions under that act of relevance.

[12]Federal regulations interpreting the Social Security Act distinguish between "entitlement overpayments" and other overpayments; an entitlement overpayment arises when the claimant accepts the overpayment in reliance on erroneous information from

on a case by case basis, taking into account the origin of the overpayment, the extent to which the recipient changes his position in reliance on the receipt of benefits, and the impact of recoupment upon the recipient's current financial position.[13]

As an example of the suggested approach we cite *Woods* v. *Gardner* (W.D.Pa. 1968) 286 F.Supp. 648, a case in which the Social Security Administration awarded widow's benefits to a claimant, but sought recoupment when it later discovered that, unknown to claimant, her ex-husband had procured an *ex parte* divorce several years before his death. The court observed that the claimant was 68 years of age, had been compelled by economic necessity to spend the benefits, and could not repay them without returning to work. It concludes that "the equities of the case are not, in our opinion, in favor of compelling plaintiff at this late stage in her life to spend almost three years in making restitution. . . . We are confident Congress did not intend . . . to place so heavy a burden upon one who is the unfortunate and innocent object of an erroneous Administration determination." (286 F.Supp. at p. 652.)

---

an official source. (20 C.F.R. § 404.510a.) The regulations always deem recovery of entitlement overpayments to be against equity and good conscience. Respecting other overpayments, the regulations distinguish betwen those cases in which recovery will defeat the purpose of the act, and those in which it is against equity and good conscience. Recovery of an overpayment will defeat the purpose of the act if "the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses." (20 C.F.R. § 404.508.) Recovery is against equity and good conscience "if an individual, because of a notice that such payment would be made or by reason of the incorrect payment, relinquished a valuable right . . . or changed his position for the worse. . . . In reaching such a determination, the individual's financial circumstances are irrelevant." (20 C.F.R. § 404.509.)

The parties disagree on how plaintiffs would fare under these regulations. Resolution of this hypothetical question is difficult in view of the differences in administrative procedures between state unemployment compensation and federal social security.

We note also that the California Unemployment Insurance Code contains no express statutory proscription of recoupment in cases in which recovery of the overpayment would defeat the purpose of the statute. Yet all statutes should be interpreted to promote, rather than defeat, the general purpose of the law (*People* v. *Centr-O-Mart* (1950) 34 Cal.2d 702, 704 [214 P.2d 378]); thus even in the absence of express legislative command we should construe the broad language of section 1375 so as to preclude recoupments which defeat the purpose of the unemployment compensation program.

[13]See *Hays* v. *Finch* (W.D.Pa. 1969) 306 F.Supp. 115; *Resnikoff* v. *Gardner* (N.D.Fla. 1968) 290 F.Supp. 638, 641; *Blume* v. *Gardner* (W.D.Mich. 1966) 262 F.Supp. 405, 419, affd. 397 F.2d 809; *Gettinger* v. *Celebrezze* (S.D.N.Y. 1963) 218 F.Supp. 161, 163-164, affd. 330 F.2d 959; *Green* v. *Secretary of Health, Education and Welfare* (D.D.C. 1963) 218 F.Supp. 761, 764.

■ The provisions of the Unemployment Insurance Code must be liberally construed to further the legislative objectives. (*Gibson* v. *Unemployment Ins. Appeals Bd.* (1973) 9 Cal.3d 494, 499 [108 Cal.Rptr. 1, 509 P.2d 945].) Those objectives are set out in *Java:* "Unemployment benefits provide cash to a newly unemployed worker 'at a time when otherwise he would have nothing to spend,' serving to maintain the recipient at subsistence levels without the necessity of his turning to welfare or private charity. . . . Early payment of insurance benefits serves to prevent a decline in the purchasing power of the unemployed, which in turn serves to aid industries producing goods and services." (402 U.S. at pp. 131-132 [28 L.Ed.2d at p. 674].)

Achievement of these objectives requires not only the prompt payments of benefits (*Java,* 402 U.S. at p. 133 [28 L.Ed.2d at pp. 674-675]; *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 298 [109 P.2d 942, 132 A.L.R. 715]),[14] but the free availability of these benefits to meet current expenditures. Simply putting money into the worker's hands will neither alleviate the hardship of unemployment nor maintain purchasing power if that worker feels obligated to hold that sum intact until the final conclusion of the appeal.[15] Although a majority of appeals by em-

[14]In *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715], the Court of Appeal ordered the California Employment Commission, the predecessor of the present department, to withhold benefits to certain claimants even though the claimants had been found eligible by both interviewer and referee. We issued a writ of prohibition to restrain enforcement of the order. In holding that the Court of Appeal acted in excess of jurisdiction, we stated that "The very essence of the act is its provisions for the prompt payment of benefits to those unemployed. . . . Any substantial delay would defeat this purpose and would bring back the very evil sought to be avoided." (17 Cal.2d at p. 298.)

[15]In *Western etc. Lbr. Co.* v. *Cal. Emp. Com.* (1943) 58 Cal.App.2d 403 [137 P.2d 76], the trial court ordered the commission to seek recoupment of benefits paid to workers who refused to cross a picket line, although the interviewer's finding of eligibility had been affirmed by both the referee and the board. Since in 1943 no statute provided for recoupment, the trial court's order rested on the common law theory of unjust enrichment. The Court of Appeal, reversing the trial court, held that recoupment would defeat the objectives of unemployment compensation. Its opinion queried: "If the beneficiary of unemployment insurance payments be required to restore such payments to the state fund in the event of a later adverse decision by the courts, would not the very essence of the act which is its provision for the prompt payment of benefits for the immediate relief of those unemployed, at the time of their unemployment, be destroyed? . . . We can find no warrant in the act for the assumption that the legislative purpose and intent was to do anything except what would alleviate the suffering occasioned by involuntary unemployment by making payments during the existence of such condition even though the validity of such payments might be in the process of debate in the courts, and that it was not intended to visit upon the unemployed beneficiary of the fund the burden and responsibility of refunding such payments if it was later determined that the commission . . . has misinterpreted the law." (58 Cal.App.2d at pp. 409, 414.)

ployers terminate in a ruling uphclding the claimant's right to unemployment benefits, the department's form notice designed to discourage expenditure of benefits is directed to all persons whose claims are appealed. ██ ██ To the extent that claimants are induced by that notice to postpone receipt of benefits, or are inhibited from using benefits to maintain their level of consumer purchases, the notice defeats the objectives of the program.[16]

4. ██ *Unemployment Insurance Code section 1379, which permits the collection of overpayments by setoff against future unemployment benefits, does not conflict with section 303 of the Social Security Act.*

Unemployment Insurance Code section 1379 authorizes the Director of the Department of Human Resources Development to recover overpayments by offsetting the amount of the overpayment against any benefits to which the recipient may become entitled within certain specified periods following the determination of the overpayment.[17] Acting under this stat-

---

[16]The board argues that to permit a claimant to retain benefits regardless of the outcome of the appeal renders that appeal meaningless. To the contrary, such an appeal serves several functions. First, the appeal normally will be resolved long before the benefit period for unemployment compensation has run, and thus determines whether the recipient will *continue* to receive benefits. Second, under section 1335 the result on appeal determines whether the cost of unemployment benefits can be charged to the employer's reserve account. Finally, in cases in which recovery of benefits is not "against equity and good conscience," a finding that the claimant was not entitled to the benefits is a necessary prerequisite to an action to recover them.

At oral argument the Attorney General, representing the board, argued that in imposing liability for overpayments arising from "fault on the part of the recipient," section 1375 referred not to any fault of the claimant in obtaining the overpayment, but to the misconduct which led to the claimant's discharge by his former employer. Differing radically from the board's interpretation of section 1375, the Attorney General's interpretation would impose strict liability for the total amount of any overpayment to a worker previously discharged for cause, without reference to concepts of "equity and good conscience" and regardless of whether the department notified the claimant of his liability.

This argument was not raised before the superior court, the Court of Appeal, or before this court until the time of oral presentation. It contradicts both the past and current decisions and regulations of the board, distorts the language of section 1375, and throws that section into conflict with the provisions of section 1380 which prohibit recovery in double affirmance cases even if the claimant was discharged for misconduct. We therefore reject that proposed construction of section 1375.

[17]Section 1379 reads as follows:

"The director . . . may do either of the following in the recovery of overpayments:

"(a) File a civil action against the liable person for the recovery of the amount of the overpayment . . .

"(b) Offset the amount of the overpayment received by the liable person against

utory authority, the director refused to pay unemployment benefits to some of the plaintiffs until the amount withheld equalled the past overpayment.

Plaintiffs contend that section 1379, and the conduct of the director pursuant to that section, conflict with section 303 of the Social Security Act (42 U.S.C. § 503(a)(1)), which requires that state unemployment compensation systems employ methods of administration "reasonably calculated to insure full payment of unemployment compensation when due."[18] They argue that to permit the board to "pay" unemployment benefits by offsetting those benefits against a past overpayment would do nothing to alleviate the hardship of present unemployment nor serve to maintain the worker's level of consumer purchases. Such recoupment, they say, defeats the objectives of the unemployment insurance program.

Congress, however, in enacting federally administered programs similar in scope and purpose to state unemployment compensation, has provided for collection of overpayments by setoff. Title II of the Social Security Act, which provides Old Age and Survivors' Insurance, requires "expedited payment of monthly insurance benefits" (42 U.S.C. § 405, subd. (q)), yet authorizes recoupment of past overpayments by adjustments to future payments unless such adjustments "would defeat the purpose of this subchapter or would be against equity and good conscience." (42 U.S.C. § 404.) The congressional program for unemployment compensation for the District of Columbia (District of Columbia Code, § 46-319, subd. (d)), contains similar language. Federal regulations pertaining to unemployment

any amount of benefits to which he may become entitled under this division within any of the following periods:

"(1) The current disability benefit period.

"(2) The current benefit year.

"(3) Any benefit year which begins during the three-year period next succeeding the date of the mailing or personal service of the notice of overpayment determination.

"(4) One year from the beginning date of any disability benefit period which begins during the three-year period next succeeding the date of the mailing or personal service of the notice of overpayment determination."

[18]Plaintiffs also contend that recovery of overpayments by asserting a setoff against future benefits is contrary to equity and good conscience, and hence barred by section 1375. But section 1379 clearly and expressly authorizes the use of setoff to recover overpayments. In order to give effect to both sections 1375 and 1379 (see Code Civ. Proc., § 1858), we must conclude that recovery of an overpayment through setoff does not necessarily offend equity and good conscience. In determining whether recoupment violates section 1375, the issue turns not on the means employed by the department—setoff or civil action—but upon the cause and nature of the overpayment, the impact of recoupment on the claimant, and other considerations discussed in part 3 of this opinion.

compensation for federal employees and for ex-servicemen permit states to use setoff to recover overpayments. (20 C.F.R. §§ 609.21(b), 614.16(b).)

Although the Social Security Act does not mention recovery of overpayments for state unemployment compensation programs, all states have enacted laws to provide for recoupment of overpayments, and most states specifically authorize setoff as one means of recovery. (See U.S. Dept. of Labor, Comparison of State Unemployment Ins. Laws (1972) p. 4-13.) Congress has not acted to prevent the assertion of offsets against unemployment benefits; the Secretary of Health, Education and Welfare has consistently certified state programs which include provisions for setoff.

■ We conclude that although the assertion of a setoff against unemployment benefits often will frustrate the objectives of the Social Security Act, nevertheless Congress did not intend, in enacting section 303 of that act, totally to prohibit setoff as a means of recovering overpayments. We note, however, that the federally administered social security and unemployment compensation programs permit recoupment, by means of setoff or civil action, *only when such recoupment will not defeat the statutory purpose nor contravene equity and good conscience,* and that federal cases and regulations interpret such language to require consideration of the individual circumstances of each claimant. (See *supra* at pp. 324-325.) Thus if we were to interpret Unemployment Insurance Code sections 1375 and 1379 to permit setoff in every case in which the claimant has received a form notice warning of possible liability, the California statutes as so interpreted might well conflict with federal policy. The interpretation of section 1375 advanced in part 3 of this opinion avoids that result.

5. *The superior court erred in sustaining defendants' demurrer.*

In the present case the task of the superior court did not merely lie in the determination whether the appeals board correctly concluded that the six named plaintiffs were liable for overpayments. Instead, the scope of review is that set out in Code of Civil Procedure section 1094.5: "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."

In the present case the board, in rejecting plaintiffs' request for waiver of overpayments, interpreted section 1375 to permit recoupment whenever the claimant has received the department's form notice; we hold that the board in so construing section 1375 erred. In addition, the board, relying upon this erroneous construction of section 1375, framed findings of fact which centered upon the receipt of the form notice by the claimant and ignored other matters relevant to a determination of whether recoupment would be "against equity and good conscience."

We conclude that plaintiffs' complaint suffices to state a cause of action that shows an abuse of discretion (Code Civ. Proc., § 1094.5) by the Unemployment Insurance Appeals Board. (See *Jacobs* v. *California Unemployment Ins. Appeals Bd.* (1972) 25 Cal.App.3d 1035, 1040 [102 Cal.Rptr. 364].) The judgment of the superior court is reversed with directions to overrule defendants' demurrer and permit defendants a reasonable time in which to file a responsive pleading.

Wright, C. J., Mosk, J., Burke, J., and Sullivan, J., concurred.

**CLARK, J.**—I concur with the majority that, despite notification, extenuating circumstances may exist, making it inequitable or unconscionable to require repayment of funds for which the recipient was ineligible. However, because of the increased frequency of recoupment proceedings, I am compelled to clarify the procedural result of the majority's decision.

It is implicit that notification, while not establishing *conclusive* proof, does constitute a *prima facie* showing that extenuating circumstances precluding repayment do not exist. Thus, after the department has shown proper notice of possible liability for repayment, the burden of proof is to be borne by the recipient who must show it would be unconscionable for him to have to repay the state following an unsuccessful appeal. This is fair. Because extenuating circumstances—where they exist—are of an individual and personal nature, the recipient, rather than the department, is in the better position to know of them.

By adopting the above procedure, several desirable ends are realized: The procedure best calculated to fairly reveal relevant circumstances in each case is promoted; both judicial and quasi-judicial efficiency are fostered—at no sacrifice in fairness—by alleviating significantly the hardships incident to requiring proof of a negative fact; finally, the limited resources available for payment of benefits are conserved by minimizing the amount diverted to the department's investigative functions. In short,

a procedure is provided satisfying the requirements of section 1375 of the Unemployment Insurance Code, while permitting that section's fair and efficient enforcement.

McComb, J., concurred.

On May 22, 1974, the opinion was modified to read as printed above.