**Leonard A. HANLEY, Petitioner,**

v.

**Raymond J. DONOVAN, Secretary of Labor, Respondent.**

**Lorne J. HADDORFF, Petitioner,**

v.

**Raymond J. DONOVAN, Secretary of Labor, Respondent.**

CA Nos. 82–7741, 83–7166.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 18, 1983.

Decided June 5, 1984.

**474**

John Wm. Cumming, Eureka, Cal., for petitioner.

Susan M. Webman, Associate Sol., Dept. of Labor, Washington, D.C., for respondent.

Before GOODWIN, SCHROEDER, and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

Leonard A. Hanley and Lorne J. Haddorff appeal from the Assistant Secretary of Labor's determination that they are liable for overpayments of benefits erroneously made to them under the Redwood Employee Protection Program, Title II of the Redwood National Park Expansion Act of 1978, Pub.L. No. 95–250, §§ 201–13, 92 Stat. 163, 172–82 (1978).[1]  We have jurisdiction under 16 U.S.C. § 79*l*(h).

## FACTS

Title II of the Redwood National Park Expansion Act provides for benefits, including weekly layoff payments, severance payments, and retraining, to forest industry workers who are adversely affected by the expansion of the Redwood National

---

**1.** Portions of Title II of the Act are not codified. Section references are to the Act unless otherwise indicated.

Park. §§ 203, 205(b), 208, 210. In accordance with 29 C.F.R. § 92.12, Hanley and Haddorff filed applications with the California Employment Development Department for weekly layoff payments. After finding both claimants eligible for REPP benefits, the EDD determined the amount of weekly layoff payments by the length of the claimant's employment in the forest industry, the annual average number of hours previously worked and the applicable wage rate for the claimant's previous highest paid forest industry job. *See* §§ 206–208.

### Hanley

Hanley applied for REPP benefits in November, 1978. The EDD verified his employment data with his employer, and received information from the Social Security Administration that Hanley had received retirement benefits for three weeks of the period for which he sought REPP benefits. Based on this information the EDD computed a weekly benefit amount. Hanley was issued notices of determination of entitlement for weekly benefits in April, 1979, and for a lump sum severance payment in May, 1979.

Nearly two years later, in April, 1981, the EDD recomputed his benefit amounts and determined that Hanley had been overpaid $1,290.65 because the EDD in its original computation did not deduct his vacation hours from his annual average hours worked, as required by § 207(c). In May, 1981, the EDD issued Hanley a second notice that he had been overpaid REPP benefits. The EDD found that he had erroneously been paid $492.36 for those weeks in which he had received Social Security benefits. *See* § 205(b).

### Haddorff

On August 5, 1980, Haddorff received notice that he was entitled to benefits retroactive to November, 1978. Both Haddorff and his employer, the Simpson Timber Company, reported the requested employment information accurately to the EDD. In determining Haddorff's annual average hours, however, the EDD added his 1973 hours twice. The EDD did not detect its error for nearly two years, by which time the overpayments totalled $20,893.80. At the California Unemployment Insurance Appeals Board hearing, Haddorff testified that he had asked an EDD employee about his high weekly checks, but receiving no response, he assumed it was because of the overtime he had worked.

The administrative law judges affirmed the EDD's findings of overpayment in both Hanley and Haddorff's cases. Both judges held, however, that the EDD was estopped from collecting the overpayment, since the EDD had obtained all of the information necessary for an accurate determination from the claimants and other sources, and since the claimants had acted in good faith and reasonably relied to their detriment on the EDD's determinations. The Assistant Secretary upheld the findings of overpayment, but held that the doctrines of estoppel and waiver do not apply to the government's collection of overpayments under the Act.

Hanley contends that the Secretary's finding that he was overpaid should be overturned because it is not supported by substantial evidence. Hanley and Haddorff both argue that the doctrines of waiver and equitable estoppel should be applied to prevent the government from recovering the overpayments.

### ANALYSIS

#### 1. *Substantial Evidence of Hanley's Overpayment*

■ The Secretary upheld the administrative law judge's finding that Hanley was overpaid $1,290.65 because his vacation hours were not deducted from his annual hours, and $492.36 because he received REPP benefits for weeks in which he had received Social Security benefits. Hanley argues that there is not substantial evidence to support either of these findings. Although the government argues that Hanley is precluded from raising this issue

because it was not presented to the administrative agency, we find that the EDD and the Secretary were sufficiently notified of Hanley's challenge to the overpayment determination. Hanley questioned the overpayment in his application to appeal the first determination of overpayment and in the hearing on this overpayment. In the hearing notices the ALJs themselves included the issue of whether he was overpaid benefits.

■ Under the substantial evidence standard of review we subject the agency's decision to close judicial scrutiny. *Memorial, Inc. v. Harris,* 655 F.2d 905, 912 (9th Cir.1980). There is substantial evidence to support the finding that Hanley was overpaid REPP benefits for the weeks in which he received Social Security payments. Hanley's testimony and a letter from the Social Security administrator both support this finding.

The finding that the EDD mistakenly included Hanley's vacation hours in calculating his annual average hours, however, is not supported by the record. The EDD representative testified:

> I believe that that is the reason for the overpayment ... I guess in going through they discovered that they had not deducted the vacation hours. This is as far as I know what happened.

(C.R. at 28). The forms included in the record do not document the error. The EDD made the overpayment determination on the basis of certain documents and thus should have produced some evidence to rebut Hanley's allegation of improper computation. It failed to do so. Hanley is thus only potentially liable for the overpayment of $492.36.

### 2. *Equitable Estoppel*

■ The government is not an ordinary defendant, and equitable estoppel should be applied against the government with utmost restraint. *Lavin v. Marsh,* 644 F.2d 1378, 1383 (9th Cir.1981). In this case the EDD, who had all of the facts necessary to make a correct decision, erred in its determinations, and then took two years to correct its own error. Even though Hanley and Haddorff were unaware of the overpayments and may have relied on them to their detriment, we need not consider whether this is an appropriate case to estop the government. The waiver doctrine adequately protects claimants from liability for overpayments when recovery would be inequitable.

### 3. *Waiver*

■ The Act is silent on whether the doctrine of waiver can be applied to limit the collection of overpayments of REPP benefits. The Secretary urges us to hold, pursuant to the regulations which it promulgated, that individuals are always liable for the total overpayment. 29 C.F.R. §§ 92.33, 92.34. The Act, however, must be construed in a manner that is consistent with its intent and purposes. *Philbrook, Commissioner, Department of Social Welfare v. Glodgett,* 421 U.S. 707, 713–14, 95 S.Ct. 1893, 1898–99, 44 L.Ed.2d 525 (1975). Regulations promulgated under the authority of an Act which are inconsistent with that Act are invalid. *See Tongol v. Usery,* 601 F.2d 1091, 1096 (9th Cir.1979).

■ The regulations requiring the recovery of all overpayments are inconsistent with the Act and exceed the Secretary's statutory authority. Congress enacted Title II of the Redwood National Park Expansion Act in order to offset any local adverse economic effects of its decision to add approximately 50,000 acres to the park. Title II was designed to "insure that employees of the forest products industry will not be forced to suffer personal hardship as a result of the park expansion." H.R. Rep. No. 95–581, 95th Cong., 1st Sess. 27–28, *reprinted in* 1978 U.S.Code Cong. & Ad.News 463, 474. Its provisions are generous: weekly layoff benefits are equal to net wages (§ 207); forest industry workers who are laid off during a window period are conclusively presumed to have been adversely affected by the expansion of the park (§ 203); and REPP benefits are to be determined and paid promptly (§ 213(a), (d)(2)). Finally, and most significantly,

when there are two reasonable interpretations of the language of the Act, the Secretary is required to adopt that interpretation which is most favorable to employees. § 213(f). *See Local 3–98, International Woodworkers of America, AFL–CIO, v. Donovan,* 713 F.2d 436, 439 (9th Cir.1983).

The statutory language neither explicitly permits waiver of overpayments nor requires the collection of overpayments. The Secretary is authorized to develop the necessary procedures to implement the Act—§ 202—and thus is empowered to determine whether the doctrine of waiver can be applied to the collection of overpayments. The Secretary, in fact, originally proposed a rule permitting the waiver of overpayments. 44 Fed.Reg. 33,706 (1979) (to be codified at 29 C.F.R. § 92.33). The Secretary's duty to adopt those interpretations of the statutory language which are most favorable to employees is extended to this instance of statutory silence, since the determination of whether to apply or reject the waiver doctrine is inevitable, and since this determination will significantly affect forest industry workers whose hardship the Act intends to minimize. The Secretary should have adopted the interpretation most favorable to employees, thus permitting the waiver of overpayments. *See* § 213(f).

California Unemployment Insurance law provides a model waiver provision.[2] Under Cal.Unemp.Ins.Code § 1375 the collection of an overpayment is waived if:

(a) The overpayment was not due to fraud, misrepresentation or wilful nondisclosure on the part of the recipient, and

(b) The overpayment was received without fault on the part of the recipient, and its recovery would be against equity and good conscience.

Significant factors in determining whether recovery would be inequitable include: whether the claimant was ignorant of the overpayments, whether the claimant was at fault for the overpayments, the claimant's financial ability to repay the overpayments, and any detrimental reliance on the benefits. *See Gilles v. Department of Human Resources Development,* 11 Cal.3d 313, 113 Cal.Rptr. 374, 521 P.2d 110 (1974). To prove detrimental reliance a party must show that he was "misled and induced to alter his position or status." 28 Am.Jur.2d *Estoppel and Waiver* § 78 at 717 (1966) (footnotes omitted). Detrimental reliance may be shown by a change in the claimant's position in reliance on the receipt of benefits—for example by the signing of a lease or by the relinquishment of a right to collect social security payments.

The administrative law judges in both Hanley and Haddorff's cases found that the EDD had full knowledge of the facts necessary to make a correct decision, and that Haddorff and Hanley were ignorant of the overpayments. Both judges also found that Hanley and Haddorff had detrimentally relied on the overpayments.

■ Hanley received his severance payment the first part of June, 1979. (C.R. at 55–56, 70). Acceptance of the severance payment terminated his protection under the Act. § 208(d). At the time of his hearings, in 1981, he was 66 and his only income was a monthly social security payment of $404. The government makes no claim that Hanley's overpayment was the result of fraud or any fault on Hanley's part. The Secretary did not contest the ALJ's finding of detrimental reliance, and based on this finding we can assume that equity and good conscience call for waiver under the provisions of § 1375.

■ In Haddorff's case his period of protection under the REPP lasts until September 30, 1984—C.R. at 21—and thus the EDD could collect at least part of the $20,-893.80 overpayment through deductions from future benefits. *See* 29 C.F.R. § 92.-34(b). (Haddorff is currently receiving these benefits as a result of a stay of the

---

**2.** The Secretary has incorporated California unemployment insurance law into other Redwood Act regulations. *See, e.g.,* 29 C.F.R. § 92.50(c)

(reconsideration of Redwood Act determinations to be made according to California unemployment insurance statutes and regulations).

Secretary's order allowing recoupment.) At his hearing Haddorff testified that his net pay was about $1300 a month, and that most of this was necessary for living expenses for him and his family. There is no evidence showing whether Haddorff has acted in reliance on the future benefits, or whether his resources are adequate to repay all or part of the overpayments. To determine whether there is detrimental reliance on remand the fact finder should examine: (1) whether Haddorff has changed his position such as by signing a lease or relinquishing a right to charity in reliance on the future benefits, and (2) whether Haddorff has changed his position in reliance on the payments received so that his current financial needs do not enable him to make the repayment.

We hold that the doctrine of waiver, as defined in the California Unemployment Insurance Code, applies to the collection of overpayments of REPP benefits. The Secretary's decision in Hanley's case is reversed. The Secretary's decision in Haddorff's case is reversed and remanded for a determination of whether the waiver provision of § 1375 should apply.