**Jean A. KILBY**

v.

**Abraham RIBICOFF, Secretary of Health, Education and Welfare of the United States.**

**Civ. A. No. 28848.**

United States District Court
E. D. Pennsylvania.

Oct. 5, 1961.

Gawthrop & Greenwood, by William H. Rivoir, Jr., West Chester, Pa., for plaintiff.

Joseph S. Lord, III, U. S. Atty., by Carl J. Melone, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

WOOD, District Judge.

This is a proceeding to review the determination of the Social Security Administration that plaintiff herein must pay back to the Administration $2,801.30, the amount of an alleged overpayment made to the plaintiff in March, 1957.

A brief summary of the facts involved is necessary to an understanding of the legal problems presented.

On November 21, 1953, the plaintiff's husband died, leaving plaintiff with a young daughter. The child was being adopted by plaintiff and her husband, but the adoption procedures had not been completed when the husband died. Plaintiff applied for monthly insurance benefits, for herself and the child, under the provisions of the Social Security Act, 42 U.S.C.A. § 401 et seq., which at that time provided $63.80 per month for the mother of a child of a deceased wage earner, and a like sum for the child. These monthly sums were payable only so long as the mother (or the child) did not earn more than $75 a month in wages.

The Administration denied both plaintiff and her daughter any monthly benefits on the ground that the daughter was not the child of a deceased wage earner within the meaning of the Social Security Act. While awaiting the Administration's ruling, the plaintiff had obtained employment and was earning more than $75 per month. After the denial of her application for benefits, plaintiff fought the case through the District Court and to the United States Court of Appeals for the Third Circuit. After two and one-half years of litigation, the Court of Appeals reversed the position of the Administration and held that plaintiff's daughter was a child of a deceased wage earner and that plaintiff was the mother of such child within the meaning of the Act.[1] This decision meant that the Administration should have been sending plaintiff two monthly checks, one for herself and one for her daughter, beginning in November, 1953. Of course, if the Administration had granted plaintiff's application in the first place, plaintiff would not have been able to both keep the monthly checks and also keep her job, since she was then earning more than $75 per month. But when the Administration denied all benefits to her and her child, plaintiff was required to continue working to support her family. She lost what would otherwise have been her right to choose between continuing to work or staying at home.

Two and one-half years later, plaintiff's employment and earnings were an accomplished fact; but a fact apparently not considered by the parties or the courts involved in the litigation. Soon after the decision of the Court of Appeals, plaintiff's attorney wrote to the Social Security Administration in Washington, inquiring when plaintiff would receive the checks covering the past two and one-half years during which she and her child should have been receiving monthly benefits. The Administration wrote that the checks would be mailed out in a matter of days. Thereafter, sometime in March of 1957, Mrs. Kilby received two checks, one for her daughter and one for herself, each in the amount of $2,855. She deposited these checks in the bank, and to date she has not drawn on this fund for any purpose.

The checks, covering past benefits which the government confessed, were immediately followed by current monthly benefit checks, each in the amount of $73.90. Plaintiff cashed and used her daughter's monthly checks. However, she kept her monthly checks and set them aside for return to the Administration, since she knew that she was earning more than the permissible amount, and was therefore not entitled to receive her mother's benefits. She subsequently returned these monthly checks to the Administration. Benefits for the plaintiff were suspended by the Administration

1. See Kilby v. Folsom, 3 Cir., 1956, 238 F.2d 699, 60 A.L.R.2d 1065.

in November, 1957, when it apparently came to their attention that plaintiff was earning more than the permissible wages. Thereafter, the Administration demanded the return of the $2,801.30 [2] originally paid to plaintiff for the years 1954, 1955, 1956, and part of 1957 as mother's benefits, on the ground that she had earned more than the permissible amount in those years also, and had thereby disentitled herself.

A hearing was held at which plaintiff testified that she firmly believed that she was entitled to keep the two large checks she had received after winning her case in the Court of Appeals. She also stated at the hearing that she had never attempted to conceal from the Administration the fact that she had been working during the litigation. (See notes of testimony, page 7, at page 37 of the record). The Hearing Examiner concluded, however, that Mrs. Kilby had taken an unreasonable view of what the law was with regard to her right to take and retain the large check, and that she was therefore at fault. He further concluded that requiring that the money be returned to the Administration would not violate the purposes of the Act nor be against equity and good conscience. From that decision, plaintiff is seeking relief in this Court.

The parties have treated this matter as involving the propriety of requiring plaintiff to return an "overpayment" to the Social Security Administration. They have considered the large check Mrs. Kilby received, covering mother's benefits from 1954 through part of 1957, as an overpayment because during those years Mrs. Kilby was earning over $75 per month, and had the checks been sent to her on a current monthly basis at that time, she would not have been entitled to retain them. However, we are not convinced that there was an overpayment in this case. Of course, Mrs. Kilby could not have kept her mother's benefit

checks and her job too, if the Administration had honored her application for benefits in the first instance. But the Administration denied her all benefits, and she had no choice other than to work. As plaintiff's counsel points out, if Mrs. Kilby had been able to support her family without working during the litigation, there would be no question of her right to receive and keep the money in question. But because she was required to work in order to support her family, the Administration claims the check covering the back benefits was an overpayment.

We need not decide whether there was an overpayment in this case, for we think that even though there were an overpayment, the Administration may not now require Mrs. Kilby to return the money.

■ We observe at the outset that the questions presented herein concern ultimate conclusions to be drawn from evidentiary facts which are not in dispute. We are not, therefore, bound by the conclusiveness of findings of the Administration. Kilby v. Folsom, 3 Cir., 1961, 238 F.2d 699, 700, 60 A.L.R.2d 1065, and cases cited therein. The Social Security Act permits an individual to retain an overpayment if that individual can establish that he was not at fault and that requiring return of the money would be against equity and good conscience or would defeat the purposes of the Act. The Administration has detailed regulations interpreting the statutory language "fault" and "against equity and good conscience." 42 U.S.C.A. § 404(b). We have examined the regulations and studied the Hearing Examiner's application of those regulations to the facts of this case. He concluded that Mrs. Kilby was "at fault" in retaining the check in question, and that requiring her to return the money now would not defeat the purposes of the Act or be against equity and good conscience. We think that these conclusions are not supported by the

---

2. The slight discrepancy in the amount originally paid to the plaintiff and the amount demanded to be returned by the Administration represents an adjustment made by the Administration, which is explained in the Hearing Examiner's opinion, but which is not pertinent to this opinion.

evidence and are not reasonable infer- ences therefrom.

 We do not hold that erroneous payments made after litigation may never be recovered by the Administration. Each case must bear its own burden and depend on the facts produced. The terms "fault" and "equity" contained in the regulations are not to be taken lightly and our decision on the facts of this case must be governed by those terms as explained in the regulations. But if there was any fault here, there is no evidence that Mrs. Kilby was at fault. She admittedly made no incorrect statement to the Administration. Nor did she fail to furnish them with any information which they required her to furnish. The Hearing Examiner found that Mrs. Kilby was at fault in making an "unreasonable interpretation of the law." But it appears to us to be perfectly reasonable for a woman to believe that she was entitled to keep money sent to her by the Administration after the United States Court of Appeals for the Third Circuit held that she was entitled to that money. Certainly "equity" would dictate that after two and one-half years of litigation on behalf of her and her daughter, vigorously contested by the government, the Administration can not now require repayment because of an issue (plaintiff's wages) which they failed to raise during this litigation.

The Administration's erroneous decision deprived the plaintiff of the right to choose whether she would stay home with her young daughter and accept the two monthly benefit checks; or whether she would give up her mother's benefit check and relinquish the opportunity to remain home with her child, in order to obtain more income. For a widowed mother, this choice is not something to be casually brushed aside; we think it was a valuable legal right of which plaintiff here was deprived. Requiring her now to return the money which she should have received then to enable her to make that choice, would, in our view, be against equity and good conscience.

Having found that the plaintiff was not at fault in accepting the check, and that requiring her to return the money would be against equity and good conscience, we must reverse the determination of the Social Security Administration.