Abraham GETTINGER, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education and Welfare,
Defendant.

United States District Court
S. D. New York.

June 19, 1963.

Mortimer Getzels, of Legal Aid Society of New York, New York City, Gertrude L. Schlesinger, New York City, of counsel, for plaintiff.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, John Hanna, Jr., Asst. U. S. Atty., of counsel, for defendant.

FEINBERG, District Judge.

Plaintiff, a banquet waiter, has brought this action to review a final decision of the Secretary of Health, Education and Welfare that denied payment to plaintiff of amounts previously recovered from him by the Social Security Administration ("SSA"). The recovery was made because plaintiff failed to report his full 1958 earnings to the SSA,

and he consequently received excessive social security benefits in that year. In accordance with 42 U.S.C. § 405(g), defendant has filed a certified copy of the transcript of the record, including the evidence upon which the findings and decision complained of are based. Defendant now moves for judgment on the pleadings under Rule 12(c), Fed.R.Civ. P., 28 U.S.C. After examination of the record, defendant's motion is granted, and the decision of the Secretary is affirmed.

In 1958, plaintiff earned $1,235 in wages and $1,336 in tips from his employment as a waiter, all of which he reported on his income tax return.[1] In that year, he also received $70.50 per month in social security benefits.[2] The Social Security laws ("the Act")[3] at the time provided that a person otherwise entitled to benefits would lose them for a particular month if he earned over $1,200 for the whole year and was charged with earnings in that month of an amount specified in the Social Security Regulations.[4] In 1959, plaintiff reported to SSA as earnings for 1958 only the wages portion of his remuneration, and he therefore was chargeable with earnings over the specified amount for only one month of 1958.[5] SSA subsequently determined that plaintiff's tips were also earnings.[6] With tips included as earnings, plaintiff was chargeable with earnings over the specified amount in each month of 1958, and SSA therefore determined that the 1958 benefits paid to him should not have been paid.[7] SSA also determined that plaintiff was without fault in his reporting to SSA and his receipt of 1958 benefits because he mistakenly believed that tips were not earnings for SSA purposes.[8] SSA recovered these overpayments by withholding from April 1961 to March 1962 $40 per month of plaintiff's $80 per month[9] social security benefits admittedly due him.

The issue raised on review is whether the recovery by SSA of overpayments to plaintiff either (1) "defeats the purpose" of the Act, or (2) is "against equity and good conscience," since the Act provides that when the recipient is without fault, "there shall be no * * * recovery [of overpayments] by the United States" in either of those two instances. 42 U.S.C. § 404(b). Social Security Regulations at the time of plaintiff's hearing before the Hearing Examiner defined these statutory concepts as follows:

" 'Defeat the purpose of title II' [the Act] means defeat the purpose of benefits under this title, i. e., to provide at least a subsistence income for beneficiaries. This depends upon whether the individual has an income or financial resources sufficient for more than ordinary needs, or is largely or solely dependent upon current payment of benefits for the necessities of life." 20 C.F.R. § 404.508.

" 'Against equity and good conscience' means that it would be inequitable to ask for repayment from the individual (regardless of his financial circumstances). This depends upon whether the individual by reason of the payment has

"(a) Relinquished a valuable right, e. g., a wage earner who has retired from employment which he is now unable to regain; or

"(b) Changed his position for the worse, e. g., a wage earner entered

1. Transcript of Record filed by the Secretary, p. 203 [hereinafter cited as "Tr."].

2. Tr. p. 53.

3. 42 U.S.C. §§ 301–1370. (Amended in 1962 to extend to § 1400).

4. 42 U.S.C. §§ 403(b) (1), 403(e); 20 C.F.R. § 403.503(a) (1) (1961). The statute was amended in 1960 to increase allowable earnings. 42 U.S.C. § 403(f) [formerly § 403(e)].

5. Tr. p. 91.

6. Tr. pp. 257–258; see 20 C.F.R. § 404.-1027(k) (3) (1961).

7. Tr. pp. 257–258.

8. Tr. pp. 257–258.

9. By 1961, plaintiff's monthly benefits had been raised from $70.50 to $80.00 per month. Tr. p. 242.

into employment relying on the erroneous advice of a Bureau repre-. sentative that his employment after entitlement is not covered and did not report the employment." 20 C. F.R. § 404.509.

■ As to whether recovery by SSA would defeat the purposes of the Act, the record shows that plaintiff originally estimated his monthly expenses as approximately $204.[10] Although plaintiff later raised his estimate to approximately $262,[11] the original determination of the SSA relied upon the $204 amount.[12] Plaintiff's income was $2,571 in 1958 ($215 per month), and $3,033 in 1959 ($253 per month), both exclusive of benefits.[13] Plaintiff indicated that he sometimes received unemployment benefits when he was not working, but he did not specify any amount.[14] He estimated that his 1960 income would be higher than his 1959 income, and he estimated that his 1961 income would be about $253 per month.[15] He also had a $2,000 savings account at the time the overpayments were recovered.[16] The Examiner found that the evidence before him did not establish that recovery of the overpayments defeated the purposes of the Act.[17] Under the applicable standard of review,[18] I cannot say that there is not substantial evidence to support this finding or the conclusion implicit in it that,

at the time of the deductions by SSA, plaintiff was not largely or solely dependent on SSA benefits for the necessities of life.

■ As to whether recovery by SSA would be against equity and good conscience, plaintiff first contends that the deduction of $40 per month from his benefits, commencing in April 1961, required him to relinquish the valuable right of being free to choose whether to do "little or no work" at his advanced age.[19] This argument is actually another way of urging that plaintiff was dependent upon the $40 per month benefits being deducted so that the deduction compelled him to go to work. However, this contention is inconsistent with the factual conclusion of the Examiner, discussed above, that recovery of the overpayments did not defeat the purposes of the Act. It should be noted that the evidence in the record indicates that plaintiff voluntarily worked up to March 1961, prior to any formal notice from SSA that any deductions would be made from his monthly benefits. Plaintiff introduced no evidence at all before the Examiner to establish that his economic circumstances caused him to work, commencing with April 1961, because of the deduction of $40 a month. In view of the evidence in the record as to plaintiff's economic situation, plaintiff's argument on this point is not well taken.[20]

10. Tr. p. 237.

11. Tr. p. 240.

12. Tr. p. 258.

13. Tr. pp. 202–203, 227–228.

14. Tr. p. 236.

15. Tr. pp. 236–237.

16. Tr. pp. 238, 241.

17. Tr. p. 11. The crucial findings of the Examiner were:
"The evidence, however, does not establish that recovery would cause hardship to the claimant nor that it would be against equity and good conscience or defeat the purposes of Title II of the Social Security Act. It is noted that claimant's financial questionnaire reports monthly income considerably in excess of his expenditures."

18. 42 U.S.C. § 405(g); Kerner v. Flemming, 283 F.2d 916 (2 Cir. 1960); Adams v. Flemming, 276 F.2d 901 (2 Cir. 1960).

19. Complaint, para. 7.

20. This case is clearly distinguishable from the situation in Kilby v. Ribicoff, 198 F. Supp. 184 (E.D.Pa.1961), where the action of SSA in withholding benefits compelled plaintiff to go to work and earn money, which was later held by SSA to disqualify her from benefits wrongfully withheld in the first place. In Kilby, the Court held that this was "against equity and good conscience." Id. 198 F.Supp. at 187. In that case, it was clear on the facts that plaintiff was dependent upon the benefits, and that SSA, in effect, required plaintiff to do something which it then used as a defense to her claim, clearly inequitable under any circumstances.

164

Plaintiff's next contention is that, commencing in December 1961, when (according to the complaint) [21] he was unable to find employment because of his advanced age, he was unable to maintain himself on the reduced social security benefits and was obliged to borrow from relatives as well as draw money from a personal burial fund. This, according to plaintiff, was a change of position for the worse within the meaning of the Regulation quoted above. This appears to be an incorrect construction of the Regulation and the law, which require a change of position for the worse either "by reason of the overpayment" or in reliance on action or inaction by SSA.[22] In this case, overpayments were concededly made in 1958, and plaintiff has made no allegation that he changed his position in any way because of those overpayments.[23] Moreover, plaintiff has not alleged that he has done anything in reliance on any action or inaction of SSA. He has alleged that, as a result of SSA deductions in 1961 and 1962, he was compelled to take certain action, such as borrowing money. However, I do not believe that this is reliance upon SSA action or inaction which estops SSA from recovering overpayments. Therefore, plaintiff's position that SSA cannot recover the overpayments is not well taken.

Ruling against social security claimants in these cases is disquieting because the amounts involved are small, the circumstances of claimants usually engender sympathy, and frequently they are without counsel in the administrative proceeding.[24] However, under the applicable law and standard of review, defendant's motion for judgment on the pleadings should be granted. So ordered.

21. Para. 7.

22. The Regulation quoted in the text (at p. 162 above) has recently been amended to provide further examples of the meaning of change of position "for the worse." 20 C.F.R. 404.509 (1962).

23. Id., Examples 3, 4.

24. Although claimant here did not have counsel at the hearing before the Hearing Examiner, the Request for Review was apparently drafted by someone with legal training. Tr. pp. 6–7. In this Court, claimant has been represented by the Legal Aid Society of New York.