John A. ORLANDINI, Plaintiff,

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 75–C–210.

United States District Court,
E. D. Wisconsin.

Oct. 29, 1976.

Edward F. Neubecker and Barry F. Bruskin, Milwaukee, Wis., for plaintiff.

Leah M. Lampone, Asst. U. S. Atty., Milwaukee, Wis., for defendant; Marvin E. Gavin, Regional Atty., Shirley L. Moscow, Gen. Atty., HEW, Chicago, Ill., of counsel.

588

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action brought to review a final decision of the Secretary of Health, Education and Welfare (the "Secretary"), determining that the plaintiff ceased to be entitled to disability payments under the Social Security Act (the "Act") as of January 1971, and that benefits paid between April 1972 and December 1972, inclusive, constituted overpayments that must be returned to the Government. For the reasons hereinafter stated, the Court has concluded that the Secretary's decision must be affirmed.

Jurisdiction to consider plaintiff's claim is conferred by 42 U.S.C. § 405(g) which also sets forth the limited nature of the judicial review authorized in actions of this type:

"* * * The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *."

■ A district court should accordingly not afford a plaintiff a trial *de novo* of his factual claims; at the same time, however, it must be emphasized that this Court is not bound by the Secretary's conclusions of law. The plaintiff's claims must be considered in this context.

On April 18, 1961, the plaintiff was injured while on active duty in the United States Navy. Plaintiff's injury is described in the complaint as "quadriplegia with fracture dislocation of vertebrae and paralysis of his bladder, bowel, and sex functions." On the basis of this injury, the plaintiff applied for and received disability insurance benefits pursuant to the relevant provisions of the Act. (Tr. p. 13)

On December 14, 1972, an examiner of the Bureau of Disability Insurance of the Social Security Administration ("Bureau") determined that as of January 1971, the plaintiff ceased to have a disability within the meaning of the Act. (Tr. pp. 106–107) The Bureau subsequently requested that the plaintiff pay the Social Security Administration $3,507.70, said sum consisting of the disability benefits received by the plaintiff subsequent to the third month after he ceased to be disabled within the meaning of the Act.[1] (Tr. pp. 66–67).

On May 23, 1973, the plaintiff requested that the Bureau reconsider its determination in this matter. (Tr. p. 68) On January 31, 1974, the Bureau affirmed its previous actions. (Tr. p. 69) The plaintiff thereafter requested and received a *de novo* hearing of his claim by an administrative law judge of the Bureau of Hearings and Appeals. (Tr. pp. 26–60) On the basis of that hearing, the administrative law judge ruled on November 26, 1974, that the plaintiff's entitlement to disability insurance benefits ceased on March 31, 1971, and that the Government benefits received after that date were recoverable. (Tr. pp. 7–16)

The plaintiff then requested that the Appeals Council of the Bureau of Hearings and Appeals review the decision of the administrative law judge. (Tr. p. 5) By a letter dated February 27, 1975, the plaintiff was notified that the administrative law judge's decision would stand as the final decision of the Secretary. (Tr. p. 4)

On April 11, 1975, the plaintiff filed his complaint with this court. In that pleading, the plaintiff asked the Court to review the Secretary's determination that the plaintiff ceased to be disabled within the meaning of the Act after January 1971, and that the disability benefits received by the plaintiff from April 1971 to December 1972 have to be retained. The Secretary answered the complaint, and on February 9, 1976, filed a motion for summary judgment. In

---

1. Under the Act, the period of disability is deemed to continue until two months after the disability ceases, 42 U.S.C. § 416(i)(2)(D), and an individual with a disability within the meaning of the Act is entitled to receive disability insurance benefits until the third month following the month in which the disability ceases. 42 U.S.C. § 423(a)(1).

response, the defendant filed a brief in opposition to the defendant's motion.

■ In that brief, the plaintiff correctly observes that a motion for summary judgment is improper in an action to review a final decision of the Secretary brought pursuant to 42 U.S.C. § 405(g). See *Weir v. Richardson,* 343 F.Supp. 353 (S.D.Iowa 1972). As a technical matter of pleading, summary judgment suggests the possibility of the submission of new evidence in the form of affidavits. Rule 56, Federal Rules of Civil Procedure. In contrast, in entering a judgment affirming, modifying, or reversing a decision of the Secretary under 42 U.S.C. § 405(g), the district court is limited to review of the pleadings and the certified copy of the transcript of the record which the Secretary is required to file with his answer.

■ Of course, the Court is not limited to entering a judgment of reversal modification, or affirmance in these actions, for it is within the power of the Court to "order additional evidence to be taken before the Secretary." 42 U.S.C. § 405(g). In determining whether there is additional evidence that needs to be taken by the Secretary, the Court may well have to look to matters outside the pleadings and the transcript. However, in situations where the need for additional evidence is not alleged, there is need for some device by which the parties can inform the Court that the cause is ready for decision on the basis of the transcript and the pleadings. Perhaps a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure would be a more appropriate device for performing this function than a motion for summary judgment. See, e. g., *Gettinger v. Celebrezze,* 218 F.Supp. 161, 162 (S.D.N.Y.1963), aff'd per curiam 330 F.2d 959 (2d Cir. 1964). Be that as it may, litigants in this district continue to make motions for summary judgment in cases of this kind, and this despite repeated remonstrances by the Court that summary judgment is an inappropriate form of pleading. See, e. g., *Schoultz v. Weinberger,* 375

F.Supp. 929, 930 n. 3 (E.D.Wis.1974). In practice, it is merely a question of form and not substance, for all tacitly recognize that the Court is precluded from considering affidavits and other evidentiary submissions outside of the pleadings and transcript of record in deciding whether the Secretary's decision in a particular case should be modified, reversed, or affirmed.

■ When practice and procedural theory so consistently conflict, an argument can be made that theory shall give way. The Court, however, will sidestep that particular problem and be content to merely construe the Secretary's motion for summary judgment as a motion that the Court affirm his decision on the basis of the pleadings and the transcript of record. As so construed, it is apparent from the plaintiff's brief that he is likewise agreeable to a decision of this matter on that basis, albeit with a preference for a different result. The Court accordingly will turn to the merits of the plaintiff's claim.

Although the plaintiff's complaint contains a challenge to the Secretary's determination that the plaintiff ceased to be disabled within the meaning of the Act in January of 1971, a review of the record in this case indicates that the challenge is not seriously advanced.

■ At the outset, it is necessary to understand that the plaintiff's physical condition has remained essentially the same throughout the period in question. The Secretary's determination that the plaintiff's disability ceased in January of 1971 merely reflects the fact that by that date the plaintiff was earning income in excess of $200 a month. Under the Act, disability is a functional rather than a physical or medical concept; more exactly, a presumption of disability arising from a given medical situation is overcome if as a matter of fact the individual earns from work activity an amount in excess of a given sum. See 42 U.S.C. § 423(d) and 20 C.F.R. §§ 404.-1501, 404.1532, 404.1534, and 404.1539.[2]

**2.** This result did not always obtain. In prior versions of the Act, "disability" was defined in

primarily physical terms, with the result that a person's entitlement to disability funds was not

In 1966, the plaintiff started his own real estate brokerage business. The income plaintiff derived from the business, however, was not enough to remove him from the statutorily defined disability classification. In August of 1970, the plaintiff incorporated his business, in the process of which other individuals were brought into the enterprise as stockholders. (Tr. p. 42) Thereafter, plaintiff's income from his real estate brokerage activities increased. By January of 1971, plaintiff was no longer disabled within the meaning of the Act, his income from work activities having exceeded permissible limits.

In the proceedings before the administrative law judge, plaintiff's counsel conceded that the plaintiff ceased to be disabled within the meaning of the Act during January of 1971. (Tr. pp. 3–4) Moreover, plaintiff's counsel went on to concede that payments received subsequent to March of 1973 constituted "overpayment," i. e., that after that date, the plaintiff was not entitled to receive funds as a result of a disability then existing within the meaning of the Act. Disability insurance benefits, however, did not stop in April of 1971; instead, plaintiff continued to receive benefits until December of 1972, by which time benefits overpaid amounted to $5,507.70. (Tr. p. 4) The only contention advanced by the plaintiff in administrative proceedings before the Secretary, and the only contention seriously maintained in this forum is that although the plaintiff was not prospectively entitled to receive such funds, the Secretary is not entitled to the retroactive return of such funds once they were received by the plaintiff.

Plaintiff bases his claim on 42 U.S.C. § 404(b):

"In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of [Title II] or would be against equity and good conscience."

With regard to this claim, the administrative law judge concluded:

"The claimant was without fault in the matter of the overpayment made; however, recovery or adjustment of the amount of the overpayment existing on the claimant's earnings record would not defeat the purpose of title II or be against equity and good conscience. Waiver of recovery is not applicable in claimant's case." (Tr. p. 16)

In challenging the Secretary's decision that the overpayment he received was recoverable, plaintiff does not contend that recovery would "defeat the purpose" of Title II of the Act. As the Secretary has defined that requirement, recovery is waived if it would deprive the recipient of the overpayment of funds which are needed for "ordinary and necessary living expenses." 20 C.F.R. § 404.508. At the hearing before the administrative law judge, the plaintiff conceded that the financial success of his real estate business was such that repayment of the $3,507.70 herein involved would not involve any financial hardship, if hardship were to be defined as going "without food, shelter or clothing."[3] (Tr. pp. 53–54)

Plaintiff instead asserts that recovery of overpayments in this case will be "against equity and good conscience." Regulations promulgated by the Secretary contain the

necessarily altered by the fact that a certain amount of income was derived from work activity. See *Resnikoff v. Gardner,* 290 F.Supp. 638 (N.D.Fla.1968). In 1968, Congress added what is now 42 U.S.C. § 423(d)(4), in effect changing the definition of disability to that set forth in the text. See *Cucuzzella v. Weinberger,* 395 F.Supp. 1288, 1295–1296 (D.Del.1975).

3. It is doubtful whether "ordinary and necessary living expenses" are restricted to a bare subsistence level of food, shelter, and clothing. Since the plaintiff does not press the issue in this proceeding, however, it is not necessary for the Court to define or otherwise decide the scope of that phrase.

following definition of the foregoing phrase:

" 'Against equity and good conscience' means that adjustment or recovery of an incorrect payment * * * will be considered inequitable if an individual, because of a notice that such payment would be made or by reason of the incorrect payment, relinquished a valuable right * * * or changed his position for the worse * * *. *In reaching such a determination, the individual's financial circumstances are irrelevant.*" 20 C.F.R. § 404.509 (emphasis added).

The gist of the plaintiff's position is that he handled his finances in a way that would have been different had he not assumed that he was entitled to the payments he received from April of 1971 to December of 1972. This "alteration of expenditure patterns" argument is most directly stated in defendant's brief at page 4:

" * * * [F]rom November 1961 through December 1972, the plaintiff had received social security benefit payments at regular intervals and in an amount which adequately covered his ordinary living expenses. * * * [D]uring the years he received social security benefits, the plaintiff recycled all the income he derived from his real estate business back into the business to promote its speculative operations; for, he could not reasonably have anticipated that the social security money he had been spending on his fixed living expenses would at some future date be reclaimed by the government.

"Thus, having been misled by the government's failure to inform him that the benefits were being paid in error, the plaintiff used all of his earnings for investment in the future of his business, rather than saving the same for repayment to the government at some future date.

"Consequently, in reliance upon the error the plaintiff pursued an extensive investment pattern in his business and refrained from setting aside money for his personal savings until January 1973.

"Should the Secretary's decision be affirmed, the quadraplegic plaintiff will be forced to nearly deplete his only recently acquired personal savings to pay back the government.

"In summary, due to good faith reliance upon the erroneous payments made to him by the Social Security Administration, the plaintiff did not begin to accumulate savings for his personal use until he learned that the payment of social security benefits had ceased. The money which the plaintiff has since been savings for his future protection and security will be largely consumed if the order for recovery of the overpayment is affirmed."

■ At the outset, the specter of the complete liquidation of a quadraplegic's life savings is something of a red herring. The notice of overpayment which the Bureau sent to the plaintiff provides that repayment may be by installments if lump sum repayment would be burdensome. (Tr. pp. 66–67) Moreover, the law appears to be that the requirement that recovery be against "equity and good conscience" is not met even though recovery would require the recipient of the overpayment to borrow from relatives and draw money from a personal burial fund. See *Gettinger v. Celebrezze,* 218 F.Supp. 161, 164 (S.D.N.Y.1963), aff'd per curiam 330 F.2d 959 (2d Cir. 1964).

The plaintiff's argument is thus reduced to an assertion that he would have invested less in his business and scaled down his promotional activities if he had known that the benefits he received from April of 1971 to December of 1972 were not his to keep. The difficulty of this line of argument is that the standard set forth in the relevant administrative regulations is not merely that the recipient change his position,[4] but

---

4. " * * * [I]f * * * money is spent in a way in which it would not have been but for the receipt of the benefits, the reliance stan-

dard of the regulation will be satisfied. * * * " *Cucuzzella v. Weinberger,* 395 F.Supp. 1288, 1298 (D.Del.1975).

that he change it "for the worse." [5] 20 C.F.R. § 404.509. To the extent that the plaintiff invested in his business because of the overpayments, the record indicates that such was to the plaintiff's benefit and not to his detriment. (Tr. pp. 56–57).

The conclusion to be drawn might well be different if the plaintiff had made speculative investments resulting in losses, or had otherwise foolishly expended the surplus earnings from his business. It may seem queer that the Government's right to recover disability benefit overpayments may turn on the financial prudence of the individual receiving the overpayments. This is particularly true where, as here, it arguably is the very success of the plaintiff's investment which led to the cessation of his entitlement to disability benefits.

■■ No doubt the plaintiff is aggrieved that he must repay sums paid to him as a result of what must seem from his perspective to be the fault of the Government. Indeed, repayment may appear to him to be a penalty exacted because he was sufficiently enterprising and determined as to be able to surmount his substantial physical handicap to achieve economic self-sufficiency. This consideration, however, would apply with equal force to the loss of entitlement to disability benefits which is attendant to a particular level of earned income,[6] a result the plaintiff does not challenge. Given that the plaintiff's entitlement to disability benefits ceased in April of 1971, it is not at all unreasonable to require "detrimental reliance" as opposed to "mere expectancy" before recovery of payments made after that date will be deemed waived. Where, as here, the overpayments are in effect a source of relatively costless capital, the investment of which proves productive and profitable, equity and good conscience are not offended by a requirement that the overpayment be returned.

Given that the burden of proving that a waiver of recovery is in order lies upon the plaintiff, see *Sierakowski v. Weinberger,* 504 F.2d 831, 836 (6th Cir. 1974), it is clear that the Secretary's decision in this matter must be affirmed.

For the foregoing reasons,

IT IS ORDERED that a judgment shall be entered affirming the decision of the Secretary of Health, Education and Welfare, which decision is the subject of this lawsuit.

---

5. The detriment the recipient has to suffer before recovery is waived, however, does not have to be great: "[T]he change of position may be quite minor, as long as it involves an expenditure which would not have been made but for the incorrect benefit payment." Id.

6. See footnote 2, supra.