**Dorothy SNEAD, Appellant Below, Appellant,**

v.

**UNEMPLOYMENT INSURANCE APPEAL BOARD and Department of Labor Division of Unemployment Insurance, Appellees Below, Appellees.**

Supreme Court of Delaware.

Submitted: June 18, 1984.

Decided: Dec. 17, 1984.

---

H. William Schab, Jr., Schab & Barnett, Georgetown, for appellant.

Robert W. Willard, Deputy Atty. Gen., Wilmington, for appellees.

Before HERRMANN, C.J., and MOORE and CHRISTIE, JJ.

MOORE, Justice.

Dorothy M. Snead appeals a decision of the Superior Court, affirming an order of the Unemployment Insurance Appeal Board (the Board), requiring her to repay certain unemployment benefits she was awarded and received following dismissal from her job. The question presented is one of first impression: Absent fraud, is it mandatory that the State recover unemployment benefits which it has paid a claimant and later ordered terminated? In our view equitable principles must prevail, so that recoupment does not contravene the fundamental purposes of the Unemployment Compensation Act, 19 *Del.C.* § 3301, *et seq.* (the Act). On this record we cannot approve such recovery. We, therefore, reverse the judgment of the Superior Court.

I.

For about eight years Dorothy Snead worked as a cook in a restaurant. She was discharged by her employer, allegedly for improper food preparation, and for using profanity. She sought and was denied unemployment compensation benefits by a claims deputy. Appealing that denial to a referee, Ms. Snead was awarded benefits. The referee specifically observed that the employer, though duly notified, did not attend the hearing. In her testimony before the referee the claimant denied all of the charges and allegations of the employer. She claimed to have done her work to the best of her ability, and never did anything to hurt her employer's business. She had never received any complaints or warnings from her employer about her job performance.

Specifically ruling on the issues before him, the referee stated:

In order to preclude the receipt of unemployment compensation by an employee who has been discharged the employer must show by a preponderance of the evidence, that the said employee was guilty of willful and wanton misconduct in violation of the employer's interest, the employee's duties, or the employee's expected standard of conduct. This is the measure of proof demanded by legal precedent to establish the just cause necessary to disqualify such an employee as a recipient of unemployment compensation benefits.

Since the employer chose not to attend the hearing there is no evidence to support its charges and allegations against the claimant. Mere charges and allegations unsubstantiated by probative evidence are without merit. The claimant's denial of all the charges and allegations of the employer and her testimony that she always did her work to the best of her ability and never did anything to hurt her employer's business was sufficient to negate the employer's position that the claimant's discharge was justified. Since there was no justification for the claimant's dismissal, she is entitled to benefits.

The Department of Labor then began making weekly unemployment compensation payments to Ms. Snead.

After this decision the employer appealed to the Board. At that hearing evidence was received from the employer and several other witnesses fully justifying a conclusion that Ms. Snead had loudly used foul language, which disturbed customers in the restaurant, thereby warranting her dis-

**678**

charge for cause. The Board reversed the referee's decision, and ruled that Ms. Snead was not eligible for benefits. Accordingly, the weekly payments ceased. It is undisputed that the total benefits paid her were $1,076.00. Although Ms. Snead filed a notice of appeal with the Superior Court, she voluntarily dismissed that action. Thereafter, the Department of Labor notified Ms. Snead that the benefits paid to her after the referee's decision, but before the Board's reversal thereof, would be recovered either by direct payment, or from any benefits to which she might be entitled in the future.

Ms. Snead appealed this recoupment order through administrative channels and then to Superior Court. Her efforts were unavailing. The effect of these rulings was that one who is not guilty of any fraud receives unemployment benefits at his or her peril, since the Department of Labor may retroactively recover all sums paid when an award is later disallowed.

On appeal, Ms. Snead argues that the absence of standards in the recoupment provision, 19 *Del.C.* § 3325, violates the federal Social Security Act, *see* 42 U.S.C. § 503(a)(1), (3), and the State and federal constitutions. The appellant also contends that recovery of benefits paid is in effect a prohibited attachment or garnishment of unemployment compensation. In response, the Department of Labor argues that the recoupment provision, as drafted and applied, comports with procedural and sub-

stantive due process standards. However, since our decision rests on the fundamental purpose and construction of a State statute, we do not address these issues.

## II.

▮ The Act mandates that certain employers set aside an unemployment reserve from which compensation can be paid to eligible persons during periods of involuntary unemployment. 19 *Del.C.* § 3301. *Boughton v. Division of Unemployment Insurance of the Department of Labor,* Del.Super., 300 A.2d 25 (1972). The Act is intended to serve as social insurance for persons unemployed through no fault of their own who are actively seeking work.[1] *Jewell v. Unemployment Compensation Commission,* Del.Supr., 55 Del. 16, 183 A.2d 585 (1962); *Johnston v. Chrysler Corporation,* Del.Supr., 54 Del. 279, 178 A.2d 459 (1962); *Harper v. Unemployment Insurance Appeal Board,* Del.Super., 293 A.2d 813 (1972). Consistent with its purpose, the Act is liberally construed in favor of the employee. *Haskon, Inc. v. Coleman,* Del.Super., 310 A.2d 657 (1973); *Harper v. Unemployment Insurance Appeal Board,* Del.Super., 293 A.2d 813 (1972); *National Vulcanized Fibre Co. v. Unemployment Compensation Commission,* Del.Super., 46 Del. 229, 82 A.2d 725 (1951).

However, economic protection of the Act is available only to eligible persons, i.e., those found to be able to work, available for work, and actively seeking work. *See*

**1.** The General Assembly has stated the policy of the law to be:

§ 3301. Declaration of public policy.

As a guide to the interpretation and application of this chapter, the public policy of this State is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this State. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the General Assembly to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our

economic life. This can be accomplished by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment from which benefits may be paid for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The General Assembly therefore declares that in its considered judgment the public good and the general welfare of the citizens of this State require the enactment of this measure, under the police power of the State, for the compulsory setting aside of an unemployment reserve to be used for the benefit of persons unemployed through no fault of their own. 19 *Del.C.* § 3301.

19 *Del.C.* § 3314 (establishing eligibility criteria). In addition, persons initially deemed eligible may be disqualified from benefits for any one of ten reasons specified in 19 *Del.C.* § 3315. One such factor, pertinent here, is that:

An individual shall be disqualified for benefits:

\* \* \* \* \* \*

(2) For the period of unemployment next ensuing after an individual has been discharged from his work for just cause in connection with his work ...

19 *Del.C.* § 3315(2). Thus, we recognize that the General Assembly has manifested an intent to exclude certain persons from unemployment benefits. *Lowe Bros., Inc. v. Unemployment Insurance Appeal Board,* Del.Supr., 332 A.2d 150 (1975); *Emrick v. Unemployment Compensation Commission,* Del.Super., 53 Del. 561, 173 A.2d 743 (1961). Furthermore, the Act permits recoupment of payments made thereunder. Thus, 19 *Del.C.* § 3325 states in pertinent part:

[a]ny person who, by reason of his fraud, has received any sum as benefits under this chapter to which he was not entitled shall, in the discretion of the Department, be liable to repay such sum to the Department for the Unemployment Compensation Fund or to have such sum deducted from any future benefits payable to him under this chapter. Any person who, other than by reason of his fraud, has received any sum as benefits under this chapter to which he was not entitled shall be liable to repay such sum and shall, in the discretion of the Department, be liable to have such sum deducted from any future benefits payable to him.

The statute reasonably creates two categories of claimants: those who obtain benefits through fraud, and those who receive them under other circumstances. *See id.* As to the former class, the Act expressly directs that fraudulent payments be returned to the Unemployment Compensation Fund. *Id.* This evidences the intent of the General Assembly to protect the Fund from depletion due to fraudulent claims. *See* 19 *Del.C.* §§ 3161, 3162, 3163. *Cf. Meadows v. Grabiec,* 20 Ill.App.3d 407, 314 N.E.2d 283 (1974) (fraud recoupment provision intended to recover benefits paid and to penalize those who resort to fraud to obtain such benefits).

As to the second (non-fraudulent) category, the statute is so poorly drawn that, when read literally, there is no significant difference between the first and second categories. The resultant conclusion could be that the second sentence is, on its face, surplus repetition of the first—except for the ironic consequence that as to fraud cases the Department is given the discretion to *decide liability;* whereas, in non-fraud cases, the Department's discretion is limited to *the decision of whether the liability may be deducted from future payments.*

We must make sense of meaningless statutory language if we reasonably can. In our view the second sentence of § 3325 is ambiguous when read with the first. Having in mind the purpose and spirit of the Statute, and the general rules of fairness and equity, it is not reasonable to assume that the General Assembly intended to include in the second sentence of § 3325 a situation such as the case before us; i.e., where the employee is found, by duly constituted authority, entitled to the benefits at the time she in good faith and innocently received and expended them, is subsequently found not entitled thereto by operation of law. Although we may not be able to ascertain all that the General Assembly intended by the strange second sentence of the statute, we do undertake to ascertain that which, by reasonable assumption, it did not intend. Thus, we perceive the intent of the General Assembly to be to treat compassionately those persons who innocently receive benefits which later are disallowed. In this respect the legislative focus seems to protect good faith reliance upon the State's payment of bene-

fits.[2]  *Cf. Gilles v. Department of Human Resources Development*, 11 Cal.3d 313, 113 Cal.Rptr. 374, 521 P.2d 110, 116–18 (1974) (Tobriner, J.; en banc) (liability for benefits overpayments attaches only when not against equity and good conscience).

■ Accordingly, we find implicit within Section 3325's provision for recoupment of nonfraudulent payments a fairness requirement that such recovery be allowed only where equitable considerations preponderate in the State's favor.[3]  *See Gilles*, 113 Cal.Rptr. 380–82, 521 P.2d at 116–18; *Sagaert v. Florida Department of Labor*, Fla. App., 418 So.2d 1228, 1230 (1982); *Giles v. Director of Labor*, 2 Ark.App. 301, 621 S.W.2d 10, 11 (1981).  *See also Hays v. Finch*, 306 F.Supp. 115 (W.D.Pa.1969) (whether recoupment is allowed is based on origin of overpayment, change of position by claimant, and impact of recoupment on claimant); *Gettinger v. Celebrezze*, 218 F.Supp. 161 (S.D.N.Y.), *aff'd*, 330 F.2d 959 (1963) (recoupment considered on case-by-case basis).  *See generally* Annot., 90 A.L. R.3d 987 (1979 & Supp.1983) (repayment of Unemployment Compensation benefits erroneously paid).

We also note that without the implicit fairness requirement for recoupment of nonfraudulent payments, the classification in section 3325 would have no reasonable basis, a result which the General Assembly could not have intended.  *See Kominski v. Levine*, 42 N.Y.2d 843, 397 N.Y.S.2d 381, 366 N.E.2d 81 (1977); *Abatematteo v. Levine*, N.Y.Supr., App.Div., 51 App.Div.2d 846, 380 N.Y.S.2d 350 (1976).  This construction is consistent with the salutary public policy underlying the Act, and with the rule that it is to be liberally construed in favor of the employee.  *See Johnston*, 178 A.2d at 464, *Haskon, Inc.*, 310 A.2d at 659; *Harper*, 293 A.2d at 816; *National Vulcanized Fibre Co.*, 82 A.2d at 729.  By so interpreting Section 3325, it is proper to place the burden on the State for its actions in compensating the unemployed, particularly given the State's superior resources and manpower.  *See National Vulcanized Fibre Co.*, 82 A.2d at 729 ("[i]f this Act is to be successfully administered the provisions thereof must be liberally construed; otherwise, the underlying purpose of its creation will be defeated").

■ Here, it is undisputed that Ms. Snead acted entirely in good faith in applying for unemployment compensation and in receiving payments totaling $1,076.00.  *Cf. Waters v. State*, Md.App., 220 Md. 337, 152 A.2d 811 (1959).  Originally, she was found eligible for these benefits.  Her employer even failed to appear before the referee after receiving proper notice of the hearing.

Recoupment under these circumstances would be antithetical to the principal purpose of unemployment compensation, i.e., to tide an unemployed worker over until he or she acquires a new job.  In particular, allowing recovery here could cause future recipients to refrain from spending any challenged benefits, pending appeal, for fear that a recoupment order might result. Such an effect stands the unemployment compensation law on its head.  Workers in this State are not to be put in the untenable position of innocently receiving unemployment benefits at their peril.  There is noth-

**2.** However, the Board informed us at oral argument that in nonfraudulent cases the State automatically issues recoupment orders whenever benefits, which have been paid, are later disallowed.

**3.** By this ruling we do not suggest that there has been a merger of the equitable jurisdiction of the Court of Chancery with that of the Superior Court.  Any such conclusion would be contrary to the historic and constitutional separation of law and equity in Delaware.  *See* Del. Const., art. IV, §§ 7 & 10 and 10 *Del.C.* § 341; *Monroe Park v. Metropolitan Life Insurance Co.*, Del. Supr., 457 A.2d 734, 738 (1983).  However, as to matters within the jurisdiction of the Superior Court, that tribunal may exercise its powers "according to law and equity".  10 *Del.C.* § 542(a).  The Superior Court's appellate jurisdiction to hear this matter is established by 19 *Del.C.* § 3323, and that being the case, it may invoke principles of equity in aid thereof.  *See* Pomeroy, Equity Jurisprudence, §§ 339, 340, 5th ed.

ing in our law to suggest such an anamolous consequence. *See Galvin v. Iowa Beef Processors, Inc.,* Iowa Supr., 261 N.W.2d 701, 704 (1978) ("[t]o force unemployed workers to either await prolonged litigation for a final adjudication or to pay back at some remote later date benefits already received would defeat the overriding purpose of the [unemployment compensation] act").

In the final analysis principles of equity must prevail, so that there is not added to the devastation of unemployment the icy fear that an unreasoning government lurks to enhance the terrible pressures wrought by the loss of a job.

As to the charge that denying recoupment in certain cases will deplete State funds, we note that, as here, administrative and judicial decisions prevent further exhaustion of such monies by allowing termination of benefits to persons ultimately considered ineligible. *See Gilles,* 521 P.2d at 119 n. 16, 113 Cal.Rptr. 383 n. 16. Moreover, we recognize that in a proper case section 3325 is a constitutionally valid tool for the recovery of unemployment benefits paid to persons found ineligible under the Act. *See* 19 *Del.C.* § 3301 *et seq.* But given the Act's salutary purpose, and the circumstances here, we can reach no other conclusion, than to reverse the judgment of the Superior Court affirming the Board's recoupment order.

\* \* \*

REVERSED.