# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

Delaware River & Bay Authority )

    Appellant, )

    v. )      C.A. No.: N19A-10-004 SKR

Frank Minor, )

                )

    Appellee. )

                )

*Upon Appeal from the Decision of the Unemployment Insurance Appeal Board*:

## AFFIRMED.

Adria B. Martinelli, Esq., Lauren E.M. Russell, Esq., Barry M. Willoughby, Esq., Young Conaway Stargatt & Taylor, LLP, Attorneys for Appellant.

Frank Minor, *pro se*, Appellee.

**Rennie, J.**

## MEMORANDUM OPINION AND ORDER

Before the Court is an appeal from the Unemployment Insurance Appeal Board's (the "Board") decision finding that appellee Frank Minor's ("Minor") role as Deputy Executive Director ("DED") was not designated as a major policymaking position, thus allowing him unemployment benefits. The Court previously remanded this issue to the Board to determine whether the DED position was *designated* as a policymaking position, as opposed to whether Minor conducted policymaking duties

in the course of his work. After considering the evidence adduced at the hearing, the Board agreed with Minor that the position was not designated as policymaking. Delaware River & Bay Authority (the "Authority") contends that this was an inaccurate reading of the record, and the position was in fact designated as policymaking. For the reasons set forth below, the Board's decision is **AFFIRMED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A. The Record

The factual background attendant to this action was set forth in detail in this Court's opinion in *Delaware River & Bay Authority v. Minor*.[1] In this Memorandum Opinion, the Court will only recite those facts that are germane to its ruling on this appeal.

### B. Stage of Proceedings

On July 13, 2018, the Board issued a decision reversing an Appeals Referee. In doing so, the Board found that Minor was not a "major nontenured policymaking" employee and that he was eligible for unemployment benefits.[2] On August 2, 2018, the Authority appealed the Board's decision to this Court.[3] On April 15, 2019, the Court held oral arguments on the appeal.[4]

On June 13, 2019, this Court issued a Memorandum Opinion and Order reversing and remanding the Board's decision.[5] It reversed the Board's decision in

---

[1] *Delaware River & Bay Authority v. Minor*, 2019 WL 2474770 at *6 (Del. Super. June 13, 2019) (TABLE) (Trans. ID. 63361431).

[2] On January 7, 2018, Minor filed a claim for unemployment benefits with the Delaware Department of Labor.  After his claim was denied by a Claims Deputy, Minor filed an appeal before an Appeals Referee.  The Appeals Referee held two hearings in this matter and issued a decision affirming the Claims Deputy's denial of benefits.  Minor once again appealed, this time before the Unemployment Insurance Appeal Board.  On June 20, 2018, the Board held a hearing on Minor's appeal. *See* R. on Appeal 422-28, Unemployment Insurance Appeal Board's July 13, 2018 Decision ("Board Decision").

[3] Notice of Appeal (Trans. ID. 62303543).

[4] April 15, 2019 Superior Court Proceeding Sheet (Trans. ID. 63173452).

[5] *Delaware River & Bay Auth. v. Minor*, 2019 WL 2474770 at *6 (Del. Super. June 13, 2019)

part, by holding that the DED position was not tenured. The Court also remanded and directed the Board to make a factual finding and to determine whether the DED position was *designated* as a policymaking position, as opposed to focusing solely on the duties that Minor fulfilled during his tenure.[6] Thereafter, on August 28, 2019, an appeals hearing was held before the Board.[7] On October 1, 2019, the Board made factual determinations and found that the DED position was not designated as a major policymaking position and for that reason, Minor was not excluded from unemployment benefits.[8] On October 18, 2019, the Authority filed this appeal, challenging the Board's findings.[9] The transcript from the August 28, 2019 hearing was determined to be lost, but all parties agreed that the Board's October 1, 2019 decision contained an accurate record of the Board's factual findings from the hearing.[10]

## II. STANDARD OF REVIEW

This Court has appellate jurisdiction over final agency decisions under 29 *Del. C.* § 10142. On appeal, the Court's review is limited to determining whether the agency's decision is "free from legal error" and supported by "substantial evidence."[11] Questions of law are reviewed *de novo.*[12] Substantial evidence is such evidence that "a reasonable mind might accept as adequate to support a conclusion."[13] When factual determinations are at issue, the Court must

---

(TABLE).
[6] *Id.*
[7] *See* Letter to the Parties Regarding Record of Board's Decision.
[8] R. on Appeal 481. Board Memorandum Opinion and Decision.
[9] R. on Appeal 762. Notice of Appeal.
[10] Letter to the Parties Regarding Record of Board's Decision.
[11] *Morrison v. Unemployment Ins. Appeal Bd.*, 2013 WL 5786417, at *3 (Del. Super. Oct. 18, 2013) (TABLE) (internal citations omitted).
[12] *Volk v. Unemployment Ins. Appeal Bd.*, 2016 WL 241379, at *1 (Del. Super. Jan. 13, 2016) (TABLE) (internal citations omitted).
[13] *Morrison*, at *3 (internal citations omitted).

3

"take due account of the experience and specialized competence of the agency and the purposes of the basic law under which the agency has acted."[14] The Court "does not weigh evidence, determine questions of credibility, or make its own factual findings."[15]

### III. LEGAL ANALYSIS

The issue before the Court is more limited than what it reviewed in June of 2019. Then, the Court examined whether the Board erred when it determined that the DED position once held by Minor was not a "major nontenured policymaking" position. The Court held that the Board misapplied the statute by analyzing whether Minor had *actually* been engaged in policymaking duties.

Title 19, Chapter 33 of the Delaware Code sets forth the legal structure in determining unemployment compensation. The Code reads that unemployment compensation is not available "if such service is performed by an individual in the exercise of duties. . . *[i]n a position* which, under or pursuant to the laws of this State, *is designated as*. . . [a] major nontenured policymaking or advisory position."[16] This statute is to be liberally construed in favor of the employee.[17]

The Court remanded this issue to the Board to determine specifically whether the DED *position* was *designated* as a policymaking position, as the statute dictates. The Authority now asks that the Court reverse the Board's decision that Minor's position was not policymaking and find that the Board's conclusion is unsupported by the record.

The Court disagrees. The Board did in fact rely upon substantial evidence found in the record. The Board relied upon two documents that designated the DED

---

[14] 29 *Del. C.* § 10142.
[15] *Morrison*, at *3 (internal citations omitted).
[16] 19 *Del C.* § 3302(10)(D)(iii)(V) (emphasis added).
[17] *Snead v. Unempl. Ins. App. Bd.*, 486 A.2d 676, 678 (Del. 1984).

position from its inception: Delaware River and Bay Authority Bylaw 3.7, which created the DED position, and Resolution 04-04, which specified the full job description for the DED position.

Bylaw 3.7 states the job description of the DED: "The Deputy Executive Director shall be an employee of the Authority, and shall manage and oversee special projects and other activities as assigned by the Executive Director or by Resolution of the Commissioners."[18] The Board noted there was no express mention of policymaking.

The Board also reviewed Resolution 04-04, which the Court had suggested as a "good indicator of the DED's position's duties and functions."[19] The Board admitted that it was "more challenging to decipher" and grappled with whether the DED's express responsibility of "economic development" was tantamount to policymaking.[20] The Board ultimately determined that it wasn't, because the tasks designated in Resolution 04-04 were operational and managerial, rather than policymaking. These tasks included due diligence reviews, negotiations of lease or sale of assets, and development of standard business documents.

The Authority contends that the Board's reading was a limited and erroneous construction of the record. It objects to what it perceives as the Board's assumption that managerial and policymaking tasks are mutually exclusive. It raises evidence that it believes the Board ignored, including a memo that indicates that roles subordinate to the DED were policymaking[21], minutes from an executive meeting that demonstrates the intent to develop a "significant role" for the DED[22], and the

---

[18] R. on Appeal 120. By-Laws of the Delaware River and Bay Authority.
[19] *Delaware River & Bay Auth. v. Minor*, 2019 WL 2474770 at *5 (Del. Super. June 13, 2019) (TABLE).
[20] R. on Appeal 486. Board Memorandum Opinion and Decision.
[21] R. on Appeal 519. Resolution 01-85.
[22] R. on Appeal 525. Executive Session minutes from January 20, 2004 Board of Commissioners

job description of the Executive Director which included the task of "working with senior leadership" to establish policy.[23]

The Authority is incorrect. The Board did in fact consider these arguments. It considered all the evidence presented. This was made clear by the "Summary of Evidence Presented" section of the Board's opinion.[24] The Board acknowledged its review of the Authority's February 23, 2003 and June 30, 2009 memoranda, a DED position organizational chart, Resolution 01-85, and minutes from a January 2004 executive meeting.[25]

The ruling that the Authority seeks from this Court misapprehends the Court's role in reviewing an appeal from the Board. It is settled law that the scope of this Court's review is a narrow one.[26] The role of the Court is to ensure that the Board's decision is supported by substantial evidence in the record from which it made its finding and that its decision is free from legal error. Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[27] It requires less than a preponderance of the evidence, but more than a mere scintilla.[28] The Board considered and weighed all of the evidence in the record and relied upon two key documents, in the form of Bylaw 3.7 and Resolution 04-04, which give further description of the job as it was designated at its inception. In its review of the appellate record here, the Court finds no legal error. There is no "mistake in law" present here.[29] Indeed, there is no misapplication of the statute.

---

Meeting.

[23] R. on Appeal 501. Executive Director Job Description.

[24] R. on Appeal 483. Board Memorandum Opinion and Decision.

[25] R. on Appeal 485. Board Memorandum Opinion and Decision.

[26] *Boon v. Jolly Smiles*, P.A., 2017 WL 1363896 at *1 (Del. Super. Apr. 11, 2017) (TABLE).

[27] *Oceanport Indus. Inc. v. Wilmington Stevedores Inc.*, 636 A.2d 892, 899 (Del. 1994).

[28] *Mathis v. Delaware River and Bay Authority*, 2012 WL 5288757 at *2 (Del. Super. Aug. 22, 2012) (TABLE).

[29] *Longobardi v. Unempl. Ins. App. Bd.,* 287 A.2d 690, 692 (Del. Super. 1971).

When reviewing an appeal from the Board, the Court's scope of review is limited to whether the Board's decision is supported by "substantial evidence and free from legal error."[30] It is not the Court's role to second guess the Board.[31] The Court does not sit as a trier of fact.[32] It does not have the authority to weigh evidence or make its own factual findings or conclusions.[33]

It appears from its arguments that the Authority deems the DED position as policymaking on the basis of proxy rather than designation. The Authority argues that Resolution 01-85 identified other positions, such as the Executive Director and Chief Operating Officer, which are subordinate to the DED, but are also designated as policymaking.[34] The Authority contends that this chain of command demonstrates that the DED is policymaking. After considering this argument, the Board found that the Resolution "unquestionably shows" that the Authority knew that certain positions were policymaking and that, if the Authority "intended this position to be 'policymaking', it could have said so. Instead, [the Authority] used [terms such as] 'manage' and 'oversee' to designate the DED's role. . ."[35] The Authority also points to the Executive Director's job description to show that "[w]ith the Leadership Team, [he] develops appropriate supporting policies, procedures, and practices as needed . . ."[36] The Authority concludes that because the DED is part of the "Leadership Team", then the position must also be policymaking. This is not necessarily the case. For example, to the extent that a judge is considered a

---

[30] *Zavala v. Port to Port International Corp.*, 2018 WL 1640778 at *1 (Del.Super. 2018) (TABLE).

[31] *Id.* at *2.

[32] *Woodruff v. Unemployment Ins. Appeals Bd.,* 2016 WL 4040078 at *3 (Del. Super. July 25, 2016) (TABLE).

[33] *Id.*

[34] R. on Appeal 519. Resolution 01-85.

[35] R. on Appeal 486. Board Memorandum Opinion and Decision at fn 23.

[36] R. on Appeal 501. Executive Director Job Description.

policymaker, his conferring with his law clerk doesn't necessarily transform the law clerk into a policymaker.

While the Authority's position may be a reasonable determination based on inferences and deductions, the Board's determination, based on its deductions gleaned from the record, is equally reasonable. To accede to the Authority's position would require the Court to make its own independent determination about policymaking, rather than review what was clearly and expressly designated for the DED position from its inception. While reasonable fact finders can reach different conclusions, it is well established that the unemployment compensation provision of the Delaware Code is to be liberally construed in favor of the employee.[37] On this record, it is not indisputable that the DED position is policymaking. For that reason, the Court must uphold the Board's reasonable determination on that point.

Further, even if the Board had deemed some of the DED tasks to be policymaking, it would still have to determine whether the DED was designated as a "*major . . .* policymaking position."[38] There is substantial evidence in the record to support a finding that any policymaking duties of the DED were not *major*. Indeed, when the Board analyzed the DED's designated task of economic development, it determined that while "the DED is responsible for the development and implementation of an annual economic plan – which could possibly involve policymaking – the remainder of the DED economic development functions are unquestionably operational or managerial."[39]

---

[37] *Snead,* 486 A.2d at 678.

[38] 19 *Del C*. § 3302(10)(D)(iii)(V) (emphasis added).

[39] R. on Appeal 487. Board Memorandum Opinion and Decision. (Citing the following functions as operational or managerial: due diligence reviews, negotiations of lease or sale of assets, development of standard business documents, development and implementation of an annual marketing plan, and management of properties.)

8

On this record, applying the appropriate standard of review, the Court finds that the Board's conclusions are supported by substantial evidence set forth in the record and are free from legal error. Hence, its decision must stand, even if the Court itself would have decided the matter differently.[40] The Board's decision was logical, sequential, uniform, and coherent. It considered all of the evidence produced by the Authority, yet the Board came to a different but reasonable conclusion. The Court finds that the Board's decision is tethered to the evidence in the record and without error.[41]

## IV. CONCLUSION

For the reasons stated above, the Board's determination is **AFFIRMED**.

**IT IS SO ORDERED,** this 19th day of November, 2021.

_____
Sheldon K. Rennie, Judge

---

[40] *Morrison v. Unempl. Ins. App. Bd.,* 2013 WL 5786417 at *3 (Del. Super. Oct. 18, 2013) (TABLE).

[41] Minor argues that the Court's previous ruling that the DED position was nontenured should be revisited, because the evidence presented by the Authority to the Court was materially false and discredited. The Court's current ruling leaves Minor eligible for unemployment benefits and thus, obviates the need to rule on this argument.