IRVING, J.,
for the court.
¶ 1. This appeal arises from a decision of the Circuit Court of Pearl River County reversing the decision of the Board of Review of the Mississippi Employment Security Commission (MESC) denying unemployment benefits. Feeling aggrieved, the *154 Board of Review appeals and asserts four issues which we quote verbatim:
1. Whether the Circuit Court of Pearl River County erred by reversing the Board of Review’s decision?
2. Whether the Circuit Court of Pearl River County erred by finding that the Employer, Valspar Refinish, Inc., failed to prove by substantial evidence that the Claimant, Robert E. Barnes, committed disqualifying misconduct pursuant to M.C.A. Section 71-5-513(A)(l)(b) (Rev.1995) by violating the Employer’s safety’s rules?
3. Whether the Pearl River County Circuit Court abused its discretion by substituting its opinion for that of the Board of Review, when there is substantial evidence supporting the Board of Review’s decision, such that the decision of the Pearl River County Circuit Court should be reversed?
4. Whether the Circuit Court of Pearl River County committed reversible error by misinterpreting and misapplying the definition of misconduct adopted by this Honorable Court in Wheeler v. Arriola, 408 So.2d 1381 (Miss.1982)?
¶2. Finding error, this Court reverses the judgment of the circuit court and reinstates the judgment of the MESC.
FACTS
¶ 3. Robert E. Barnes was employed by Valspar Refinish, Inc., as a pot washer for over nine years. Valspar manufactures automotive paints. Barnes’s position as a pot washer required that he clean 300-500 gallon pots in which paint was mixed. He was discharged on November 26, 2000, for violating Valspar’s safety rules. He had been previously reprimanded on four separate occasions within a seven month span before the fifth safety violation resulting in his final termination.
¶ 4. Valspar’s guidelines require that when a pot, in the washing area, is raised in the air with a forklift, it must be secured to the forklift with a chain. Three of Barnes’s four safety violations were for failing to follow this guideline. Barnes was also suspended twice without pay. One suspension was for failure to follow the previously-mentioned chain/pot guideline. The other suspension grew out of an argument between Barnes and a co-worker regarding the proper disposal of a solvent. The solvent was poured on top of Barnes by his co-worker when Barnes stepped in front of the co-worker to prevent the coworker from pouring the solvent in the wrong area. Barnes was suspended for placing himself in harm’s way.
¶ 5. After his fourth safety violation, Barnes was informed that any further violations would result in termination. The fifth and final incident, which led to Barnes’s termination, emanated from Barnes’s smoking outside Valspar’s designated smoking areas. Both Barnes and Valspar contest the facts surrounding this smoking incident. It is not disputed that Barnes was smoking while on a forklift outside a designated smoking area. However, there is a dispute as to whether barrels of hazardous waste were attached to the forklift at the time the smoking occurred. According to Barnes, he entered an area where hazardous waste was stored and, after depositing the barrels of hazardous waste in a pit, departed the area but his forklift became stuck in a bog about 100 feet from the pit. Barnes further asserts that, while he was waiting for assistance to arrive, he lit a cigarette and began smoking. Conversely, Barnes’s immediate supervisor swore that Barnes was sitting on the forklift with four barrels of hazardous waste when he found Barnes *155 smoking. Barnes admitted, when confronted by his supervisor, that he should not have been smoking in the area where he was and put the cigarette out.
¶ 6. After Barnes’s termination, he filed a claim for unemployment benefits. The claims examiner interviewed Barnes but was unable, after repeated attempts, to interview a representative of Valspar. Consequently, Barnes was approved for benefits. Valspar appealed, and the appeals referee issued the following findings of fact and opinion:
Claimant was employed at Valspar Refinish, Inc., Picayune, Mississippi, for nine years and eight months in the final capacity of a pop [sic] washer ending on November 26, 2000, when he was discharged for a safety violation. The employer has an established written policy outlining safety issues. One of those issues involve smoking. An employee is allowed to smoke at work but only in designated smoking areas. All employees are made aware of this policy upon hire. On November 26, 2000, the claimant was found with a lit cigarette in his hand a few feet away from hazardous material.[1] This infraction is one that causes a potential hazard not only to the employee but also the company itself. A lit cigarette in the presence of hazardous material could cause a fire hazard. Pri- or to this incident, there were three previous written warnings whereby the claimant violated safety issues other than the cigarette issue.[2]
* * * *
The facts in this case show that the claimant was discharged for a safety violation. An employer who handles hazardous materials has a right to expect that its employees abide by . a no smoking rule or to abide by smoking in designated area rule. The evidence shows that the claimant was made aware of the policies and chose not to abide by them. Such an action does arise to the level of misconduct as that term is used by the Mississippi Employment Security Law and would warrant a disqualification from the receipt of benefits. Consequently, the decision rendered by the claims examiner is not in order.
¶ 7. Barnes appealed to the Board of Review of the MESC, and the Board of Review affirmed the referee’s decision. Barnes then appealed to the Circuit Court of Pearl River Country which reversed the decision of the Board of Review. Other pertinent facts will be related during the discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 8. An appellate court’s review of a decision of the Board of Review of the MESC is limited. Booth v. Miss. Employment Sec. Comm’n, 588 So.2d 422, 424 (Miss.1991). "When reviewing a decision of the MESC, this Court must affirm when the decision is supported by substantial evidence.” Reeves v. Miss. Employment Sec. Comm’n, 806 So.2d 1178, 1179(¶5) (Miss.Ct.App.2002).
¶ 9. It is well established that this Court will give great deference to an administrative agency’s findings and decisions. Allen v. Miss. Employment Sec. Comm’n, 639 *156 So.2d 904, 906 (Miss.1994). “We will not reweigh the facts in a given case or attempt to substitute our judgment for the agency’s judgment.” Id. “We will overturn an agency’s decision only where the agency’s order: 1) is not supported by substantial evidence; 2) is arbitrary or capricious; 3) is beyond the scope or power granted to the agency; or 4) violates a person’s constitutional rights.” Id. “In any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.” Miss.Code Ann. § 71-5-531 (Rev.2000).
¶ 10. The MESC asserts four arguments but they may be crystalized into one argument which may be stated as follows: whether there is substantial evidence to support the findings of the Board of Review of the MESC that Barnes violated Valspar’s guidelines, and if so, whether, Barnes’s actions, as a matter of law, constitute misconduct within the meaning of the applicable law.
¶ 11. In Wheeler v. Arriola, 408 So.2d 1381 (Miss.1982), our supreme court stated that “conduct may be harmful to [an] employer’s interests and justify the employee’s discharge; nevertheless, it evokes the disqualification for unemployment insurance benefits only if it is wilful, wanton, or equally culpable.” Id. at 1383 (quoting Jacobs v. California Unemployment Ins. Appeals Bd., 25 Cal.App.3d 1035, 102 Cal.Rptr. 364 (1972)).
¶ 12. Section 71-5-513 A(l)(b) of the Mississippi Code of 1972, provides that “an individual shall be disqualified for [unemployment] benefits ... for misconduct connected with his work if so found by the commission.” Miss.Code Ann. § 71-5-513 A(l)(b) (Rev.2000).
¶ 13. The Mississippi Supreme Court has defined misconduct as:
conduct evincing such willful and wanton disregard of the employer’s interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee ... carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer’s interest or of the employee’s duties and obligations to his employer, [come] within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertence and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion [are] not considered misconduct within the meaning of the statute.
Wheeler, 408 So.2d at 1383. “The employer bears the burden of showing misconduct by clear and convincing evidence.” Trading Post, Inc. v. Nunnery, 731 So.2d 1198, 1202(¶ 15) (Miss.1999).
¶ 14. The circuit court refused to accept the findings of fact of the Board of Review. The circuit court remarked that the findings of the Board of Review were based on the facts as presented by Valspar and that the Board of Review did not give any weight to Barnes’s testimony at the hearing. The circuit court pointed out that if Valspar’s burden had been by a preponderance of the evidence then it could have affirmed the findings of the Board of Review. Instead, the circuit court found that “Valspar did not prove by substantial, clear and convincing evidence that Barnes was doing anything more than smoking in a field one hundred feet from any hazardous material. The circuit court concluded that this was an isolated incident, and the *157 conduct did not rise to the level of misconduct as defined in Wheeler.
¶ 15. The MESC argues that the circuit court erred by focusing on whether Barnes’s smoking in the hazard waste storage area actually created a fire hazard, rather than the significance of the policy and violation thereof. Also, the MESC maintains that the circuit court’s reasoning that the incident leading to Barnes’s termination was an isolated incident of unsatisfactory conduct was erroneous. Moreover, the MESC insists that the circuit court was confused on the definition of misconduct as defined in Wheeler. The pertinent part of Wheeler which applies to this case, as the MESC points out, is its explanation that willful and wanton violations of the employer’s standard of behavior constitute misconduct. Lastly, the MESC contends that there is substantial proof that Barnes committed misconduct by violating Vals-par’s no smoking policy. The MESC asserts that the proof establishes much more than carelessness in Barnes’s job performance.
¶ 16. We agree with the MESC that Barnes’s actions do indeed constitute misconduct within the meaning of the law. This is not a case of an isolated act of negligence. As to the smoking incident, the evidence was disputed with Barnes’s word against that of his employer, Valspar. The MESC, which is charged with the fact-finding responsibility, found that the forklift was not 100 feet away from the hazardous waste but that the hazardous waste was still in fact on the forklift when Barnes lit the cigarette. We cannot say that the MESC lacked substantial evidence to support its factual finding in this regard.
¶ 17. We also agree that this is not an isolated-incident case. The smoking incident was not Barnes’s first safety violation, and this violation, along with Barnes’s previous safety violations, clearly evinces misconduct of an intentional or substantial disregard of the employer’s interest or of Barnes’s duties and obligations to his employer. Within the seven months before his termination, Barnes had had four separate safety violations, two of which resulted in suspensions. On three separate occasions, Barnes neglected to place a chain around a pot while it was elevated on a forklift. Although ordinary negligence in isolated incidents is not sufficient misconduct to warrant a denial of unemployment benefits, repeated acts of negligence do rise to such level because they evince a substantial disregard of the interests of the employer and the employee’s duties to his employer. We are satisfied that, on the facts of this case, Barnes’s actions soared to such level.
¶ 18. This Court finds that the decision of the Board of Review of the MESC is supported by substantial evidence and that Barnes’s actions constituted misconduct as a matter of law. Therefore, the order of the circuit court reversing the decision of the Board of Review of the MESC is reversed, and the decision of the Board of Review of the MESC is reinstated.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY IS REVERSED, AND THE DECISION OF THE MISSISSIPPI EMPLOYMENT SECURITY COMMISSION IS REINSTATED.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.

. The record shows the actual date that Barnes was found on the forklift with the cigarette was November 22, 2000.

. The referee found that there were three previously written warnings, but closer review of the record shows that there were four prior safety violations which occurred on April 4, 2000, June 1, 2000, July 19, 2000, and October 6, 2000.